61 N.J. Super. 9 (1960)
160 A.2d 156
HENRIETTE ZWOYER, PLAINTIFF-APPELLANT,
v.
HACKENSACK TRUST COMPANY, CO-EXECUTOR AND SOLE TRUSTEE, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 1960.
Decided April 12, 1960.
*11 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. James A. McTague, Jr., argued the cause for appellant (Mr. James A. McTague, attorney).
Mr. James J. Dooley, guardian ad litem, pro se.
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff Henriette Zwoyer appeals from that portion of the Chancery Division judgment entered on September 25, 1959 holding that a patent application for an invention owned by the decedent testator, Walter R. Zwoyer, husband of plaintiff, and certain license agreements for the use of said invention were not comprehended within a bequest to her in the seventh paragraph of the will of "all of my personal chattels except cash and securities." The trial court concluded that the intent of the will was that all income-producing assets of the decedent should be placed in the trust set up in the residuary clause of the will by testator for the benefit of the wife and of his daughters and grandchildren and that the said patent rights and contracts therefore were allocable to the trust rather than to the specific bequest.
Testator, a resident of New Jersey, died on May 1, 1958, having executed a last will and testament on July 31, 1954. In 1934 while an employee of the Henry Heide Company (Heide), testator invented a machine known as a flexible automatic packaging machine. The machine was manufactured and sold by Transparent Wrapping Machine Corporation (Transparent), a separately formed corporation, in which testator owned 20% of the stock and Heide owned the remaining 80%. On April 30, 1955 Transparent was sold to Package Machinery Corporation (Package) and testator became a consultant with that company. Until that date every patent applied for by testator was automatically assigned to Transparent. After he became consultant with Package, whatever inventions he developed other *12 than the one here in dispute were assigned to that company. A separate and distinct invention for an improved scale feed, useful in connection with the original automatic packaging machine, was developed by testator while he was with Package, but was not assigned because it was developed under a special arrangement with that company.
On March 25, 1957 testator filed a patent application for his improved scale feed and thereafter, on January 20, 1958, he entered into a license arrangement with Package concerning the manufacture and sale of said invention in certain areas. In short, until the year 1955 testator's interest in any of his inventions or the accompanying patents and license agreements was represented solely by his stock ownership in Transparent.
On August 6, 1958 plaintiff instituted the present action seeking a construction of the last will and testament of her deceased husband. The interpretation of the seventh paragraph of said will is here in dispute. The testator therein bequeathed "all my personal chattels except cash and securities, unto my wife, Henriette Zwoyer, * * *." All the rest, residue and remainder of testator's estate was, under the eighth paragraph of his will, devised and bequeathed to the Hackensack Trust Company in trust for the benefit of his wife, daughters and grandchildren. The specific question raised by this appeal is whether the pending application for patent rights and the license agreement issued under said application are to be regarded as "personal chattels other than cash and securities." If so, they go directly to plaintiff; if not, under the terms of the eighth paragraph of testator's will, they fall into the trust estate.
It is fundamental that a will should be construed so as to accomplish the purpose of the testator, and any interpretation which would defeat it must be rejected. Watson v. Brower, 24 N.J. 210 (1957). Courts need not and should not submit to the "tyranny of labels," but rather should strive to ascertain and effectuate, if lawful, the overriding plan and purpose of the testator as gathered from *13 the language of his entire will and the attendant circumstances. Busch v. Plews, 12 N.J. 352 (1953). All other rules of will construction must yield to this cardinal principle, basic in our law, that the intention of the testator as expressed in his will shall prevail. Child v. Orton, 119 N.J. Eq. 438 (Ch. 1936).
"The judicial interpretive function is to find the meaning of the testator as expressed in the language used, considered in the light of the attendant circumstances and effectuate it. In re Fisler's Estate, 133 N.J. Eq. 421 (E. & A. 1943). Extrinsic evidence is not admissible to vary, enlarge, or contradict the terms of a will, for that would set at naught the statutory mandate that testamentary dispositions be in writing and attested by witnesses. But, in aid of the testatorial intention, evidence is admissible to place the construing court in the situation of the testator at the time of the execution of the will. For the purpose of determining `the object of a testator's bounty, or the subject of disposition, or the quantity of interest intended to be given by his will, a court may inquire into every material fact relating to the person who claims to be interested under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator, and of his family and affairs, for the purpose of enabling the court to identify the person or thing intended by the testator, or to determine the quantity of interest he has given by his will.' Noice v. Schnell, 101 N.J. Eq. 252, 272 (E. & A. 1927); Vide Griscom v. Evens, 40 N.J.L. 402 (Sup. Ct. 1878), affirmed 42 N.J.L. 579 (E. & A. 1880)." (Emphasis supplied.)
In re Fox' Estate, 4 N.J. 587, 594 (1950). See also In re Armour's Estate, 11 N.J. 257 (1953); In re Goldfaden's Estate, 7 N.J. 450 (1951); In re Hoffman's Estate, 53 N.J. Super. 396 (App. Div. 1959); 5 New Jersey Practice (Clapp, Wills and Administration), § 108, pp. 247, 257 (1950). It should be emphasized that the relevant or attendant circumstances to be considered by the court in construing a will are only those which existed when the will was made and were known to testator, In re Armour's Estate, supra; In re Pleasonton's Estate, 45 N.J. Super. 154, 160 (App. Div. 1957), so as to place the court in the situation of the testator at the time of its execution and thereby shed light on the meaning of the words in his will. Kennedy v. Mockler, 38 N.J. Super. 35, 49 (App. Div. 1955); Montclair *14 Trust Co. v. Lupher, 44 N.J. Super. 408, 411 (App. Div. 1957).
There seems to be no New Jersey case in which the words "personal chattels" as used in a will have been judicially interpreted. In any event, "Each case is a law unto itself; the particular interpretation of the words must be controlled by their context and a reading of the whole will from its four corners." Child v. Orton, supra, 119 N.J. Eq., at page 441.
Without indulging in an exercise in semantics, we have assessed the wording of the present will in the light of the relevant circumstances existing and known to testator at the time of its execution. It must be remembered that when the will was executed in 1954, testator had no individual title to any existing inventions, patent rights applications or licensing agreements, nor was it likely in his then relationship with Heide and Transparent that he would obtain individual title to any future rights of that nature. His interest therein was represented by his ownership of stock in Transparent. There was no intimation that the contract by which he divested himself of his individual interest would be abrogated in the future. It is reasonable to conclude that he considered his stock interest in Transparent as included within the word "securities." At that time he could not have contemplated that the assets sought by the plaintiff in the instant case would ever be encompassed by the phrase "personal chattels," since he expressly excluded therefrom all of his "cash and securities."
In the general usage of speech in the business world, the word "securities" is understood to include stock, both common and preferred, and this broad and modern acceptation of the term has been legally recognized in New Jersey in the case of Fidelity Union Trust Co. v. Lowy, 123 N.J. Eq. 90 (Ch. 1938); 5 New Jersey Practice (Clapp, Wills and Administration), § 139, p. 326 (1950).
At the time of the execution of the will, testator's only income-producing property was in the form of cash and securities. By paragraph sixth he provided:
*15 "Sixth: I authorize and empower my Executor in its discretion to retain any of my property in the same form of investment in which it may be at the time of my death, any law to the contrary notwithstanding, and in addition, I further direct my Trustee to hold in the trust fund herein created such securities as may be delivered to it by my Executor and which comprise a portion or all of my estate at the time of my death and to invest and reinvest the trust fund in such manner and in such securities as to my Trustee shall seem wise and prudent, including Common Stocks, without being limited to investments prescribed by law for trust funds, and I expressly exonerate my Trustee from liability for any loans that may accrue to my estate thereby." (Emphasis supplied.)
The foregoing language indicates that the draftsman of this will was using the terms "securities" and "investments" more or less interchangeably. The term "investments" has been considered somewhat broader in connotation than "securities," Pennsylvania Co., etc. v. Board of Nat. Missions, 139 N.J. Eq. 71 (Ch. 1946), affirmed o.b. 141 N.J. Eq. 359 (E. & A. 1947), and thus the language of the sixth paragraph of the will tends to support the conclusion that the exception in the specific bequest was intended broadly to encompass all income-producing property of the testator. The patent rights here in question fall into that category.
Paragraph eighth creates a trust in considerable detail. The income is first bequeathed to the widow, with the power to invade corpus in the event that the trust income or the widow's independent income prove insufficient to provide adequately for her care and comfort should she suffer any illness, mental or physical. At her death each of his daughters is bequeathed $20,000. The trustee is thereafter directed to add the income to said corpus until the survivor of his daughters dies, when it is to be distributed to testator's grandchildren per capita and not per stirpes. During the lives of the daughters provision is made for invasion of the corpus should they or their families require financial assistance. Testator thus exhibited an intent to provide completely for the widow through the instrumentality of the trust, except for a minor bequest of personalty. Consequently, *16 it becomes increasingly clearer that he intended to place all of the income-producing property, including any interest that he had or ever would have in inventions, patents or licensing agreements, in the trust estate provided for by the eighth paragraph of his will. An examination of the entire tenor of the will in connection with the surrounding circumstances noted supra inexorably leads to the conclusion that testator's overriding plan or purpose contemplated that the bulk of his estate, in fact, all of his income-producing assets, would be included in the trust estate so as to benefit not only the plaintiff, but testator's daughters and grandchildren as well, and to vest the widow with only minor items of personalty. The bequest to the widow of personal chattels, except cash and securities, did not include the patent rights.
Affirmed. The following allowances are made: to counsel for appellant, an attorney's fee of $750, together with disbursements and costs; and to the guardian ad litem, appearing pro se, a counsel fee of $750, together with disbursements and costs.