99 N.J. Super. 137 (1967)
238 A.2d 713
MARGARET GERMER AND EDWARD G. D'ALESANDRO, PLAINTIFFS,
v.
PUBLIC SERVICE MUTUAL INSURANCE CO., A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT, AND SEABOARD FIRE & MARINE INSURANCE COMPANY, A CORPORATION, INTERVENOR-DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 17, 1967.
*138 Mr. Nicholas Scalera for plaintiffs (Messrs. Friedman and D'Alessandro, attorneys).
Mr. Jerome S. Lieb for defendant Public Service Mutual Insurance Co. (Messrs. Harkavy & Lieb, attorneys).
Mr. Edward F. Neagle, Jr., for intervenor Seaboard Fire & Marine Insurance Co. (Messrs. Fox, Schackner, Neagle & Mastrangelo, attorneys).
FUSCO, J.S.C.
This matter is before me on a motion by plaintiff Germer and her counsel, D'Alessandro, for summary judgment against defendants Public Service Mutual Insurance Company (hereinafter Public Service) and Seaboard *139 Fire & Marine Insurance Company (hereinafter Seaboard). Both defendants have filed cross-motions for summary judgment against plaintiffs.
The case arose out of an automobile accident in which Germer was injured while a passenger in the vehicle of Dorothy Root. Root's vehicle had collided with an automobile owned by Eileen Stallone. Thereafter, pursuant to the insurance policy held by Root, a claim for medical payments in the amount of $2,000 was made to and paid by Seaboard. Upon the receipt of said monies, a proof of loss containing a provision assigning to the insured the right of subrogation to her rights was signed by Germer.
Plaintiff instituted an action against Root and Stallone to recover for personal injuries received in the accident. D'Alessandro, the other plaintiff in this motion, represented her in the prosecution of that action. At the time of the collision Stallone had a policy of insurance with defendant Public Service with limits of $10,000/$20,000. A verdict of no cause of action was returned against Root and a judgment of $60,500 entered against Stallone.
Germer appealed the verdict as to Root after a motion for a new trial was denied. Stallone also appealed and cooperated with plaintiff in her appeal. However, the Appellate Division affirmed the verdicts and judgment below.
Plaintiffs thereafter commenced the present action against Public Service to recover the amount of $10,000 plus interest on the entire judgment returned against Stallone, the insured. Public Service paid the $10,000 into court on June 2, 1967 (the judgment had been entered on February 7, 1966) and crossclaimed against Seaboard who counterclaimed against plaintiff for the $2,000. Plaintiffs counterclaimed against Seaboard to determine (1) whether the subrogation clause in the proof of loss is against public policy, (2) the priority of liens, (3) whether counsel who prosecuted the case is entitled to counsel fees and costs as a lien, and (4) to determine whether payment should be on a pro rata basis.
*140 The issues before the court on this motion are (1) whether plaintiffs are entitled to receive interest on the entire judgment or upon the amount which defendant Public Service is required to pay under its insurance policy, and (2) whether, if the medical payment subrogation clause is valid, Seaboard is entitled to recover $2,000 or a pro rata share from the $10,000 in proceeds afforded by the Public Service policy, subject to costs and counsel fees.
With respect to the first issue, plaintiffs rely principally upon Roth v. General Casualty & Surety Co., 106 N.J.L. 516 (E. & A. 1929), wherein a unanimous decision was rendered affirming the court below, and Kraynick v. Nationwide Insurance Co., 80 N.J. Super. 296 (Law Div. 1963). Public Service contends that these authorities do not control the case and, moreover, that the company offered to pay its liability immediately after the judgment was entered against the insured and therefore no interest should be charged against them.
Plaintiff D'Alessandro denies this last contention in his affidavit. Although this apparently raises a factual dispute, there are clearly no facts whatsoever in the record to indicate that defendant made an unconditional legal tender of such monies to plaintiff. Totowa v. American Surety Co. of New York, 39 N.J. 332, 350 (1963); Robbins v. Mack International Motor Truck Corp., 113 N.J.L. 377, 384 (E. & A. 1934). This appeared, too, during the course of the argument wherein defendant exhibited to the court the checks which it had tendered, and it appeared clearly that there was not an unconditional legal tender but a tender on condition that a warrant for satisfaction of judgment be signed in advance thereof.
In Kraynick plaintiff recovered a judgment against defendant's insured. Thereafter, she sued the insurance company and received a verdict in her favor. The insurer appealed from the judgment and the case was reversed and remanded. Upon the retrial of the cause a verdict was again returned in favor of plaintiff. The issue in that case was whether *141 plaintiff was entitled to recover interest on the entire judgment originally entered, and the court held that she was entitled to interest on the entire judgment.
However, in that case the insurance policy provided that the company was obligated to "pay all interest on the entire judgment accruing after the entry of judgment until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon." 80 N.J. Super., at p. 298. Because of this clear provision, the court held that the obligation to pay interest on the entire judgment was contractual and therefore was recoverable as of right:
"It is the feeling of this Court that the obligation to pay interest is a contractual one founded in the original contract of insurance, paragraph V (2) (d), and continuing down to the present time. * * * Interest was part of the bargain struck when the contract of insurance was entered into and it is recoverable as of right. Deerhurst Estates v. Meadow Homes, Inc., supra." (at p. 301)
Kraynick is not on all fours with the present case because Stallone's policy does not use the phrase "entire judgment." Rather, the policy here provides that the company is obligated to pay "all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon."
In Roth, supra, the court held that an insurer was required to pay interest on the entire judgment, irrespective of the policy limits. The provision before the court was similar to, although not identical with, the one contained in Stallone's policy heretofore recited. The policy in Roth case stated:
"* * * expense incurred by the company in defending the suit, including court costs and all interest accruing after entry of judgment, will be borne by the company irrespective of the limit of the liability expressed in the policy." 106 N.J.L., at p. 520.
*142 The court said:
"We think this language `all interest accruing after entry of judgment' clearly means interest upon the amount of the judgment." (at p. 520)
Public Service argues that Roth is distinguishable from the instant case because of the different language employed in the respective policies. It contends that the phrase in Roth, "all interest accruing after entry of judgment", must be read within the context of the phrase, "will be borne by the company irrespective of the limit of liability expressed in the policy."
There are cases in other jurisdictions which have construed provisions similar to the one in the Public Service policy. The courts which hold that the insurer is required to pay interest on the entire judgment, irrespective of the policy limits, generally rely upon one or all of the following reasons: (1) the clause is ambiguous and therefore must be construed against the insurer: (2) the company could have qualified the word "judgment," had it desired to do so, and (3) the insurer controls the litigation and by delaying payment it may influence the accumulation of interest. Therefore, it should bear the expense of a delay. Mayberry v. Home Insurance Co., 246 N.C. 658, 142 S.E.2d 626 (Sup. Ct. 1965); Powell v. T.A. & C. Taxi, Inc., 104 N.H. 428, 188 A.2d 654 (Sup. Ct. 1963); River Valley Cartage Co. v. Hawkeye-Security Ins. Co., 17 Ill.2d 242, 161 N.E.2d 101, 76 A.L.R.2d 978 (Sup. Ct. 1959); Highway Casualty Co. v. Johnston, 104 So.2d 734 (Fla. Sup. Ct. 1958); Underwood v. Buzby, 236 F.2d 937 (3 Cir. 1956); 8 Appleman, Insurance Law, § 4899, p. 364, and see generally, Annotation, 76 A.L.R.2d 983 and cases cited therein. Defendant itself, argues that if there is any issue as to the payment of interest, the issue is between it and the insured who may be aggrieved and does not run for the benefit of plaintiff. In this regard the court is not persuaded. The *143 reason that is the most convincing is contained in 8 Appleman, op. cit., p. 364:
"This would appear to be the only fair result, inasmuch as the insurer has control of the litigation, and can make its election to appeal irrespective of the insured's desires in the matter. It seems fair to compel the insurer to pay all the interest which accrues pending an appeal, even though the judgment is in excess of the policy limits, for the reason that the insured might desire to pay the excess judgment and thus prevent the running of interest, but the insurer's control of the litigation would prevent him from doing so."
Should an insured either before the termination of the initial trial or during the pendency of an appeal say to the tortfeasor, "Look, I'll buy myself out for the amount that you have in excess," the insurer would say, "You can't do that. You are violating the terms of the policy by noncooperation. We control the suit, not you, whether for excess or otherwise."
On the other hand, the jurisdictions holding an insurer liable for interest on only the amount it is required to pay under its policy give the following reasons: (1) the clause is unambiguous and clear; (2) liability of the insurer for interest on the portion of the judgment in excess of the policy limit amounts to vicarious liability, and (3) the insured during the delay had the use of the money in excess of the policy limits. Devlin v. New York Mut. Cas. Taxicab Ins. Ass'n, 210 N.Y.S. 57 (Sup. Ct. 1925); United States Fidelity & Guaranty Co. v. Hotkins, 170 N.Y.S.2d 441 (Sup. Ct. 1957); Crook v. State Farm Mut. Auto Ins. Co. of Detroit, 235 S.C. 452, 112 S.E.2d 241 (Sup. Ct. 1960); Standard Accident Ins. Co. v. Winget, 197 F.2d 361 (9 Cir. 1952), and see, generally, Annotation, 76 A.L.R.2d 93 and cases cited therein.
Although the court does not conclude that there is a majority position on this issue, if there is a modern trend it appears to be in favor of the first position. Mayberry v. Home Ins. Co., Powell v. T.A. & C. Taxi, Inc., and River Valley Cartage Co. v. Hawkeye-Security Insurance Company, *144 all supra. In Powell v. T.A. & C. Taxi, Inc., supra, 188 A.2d, at p. 656, the court stated:
"The insurer contends that the `great weight of precedent' is that liability is limited to interest on the amount of the policy limit. It is doubtful if there is any great weight of authority supporting this view. Annotation, 76 ALR 2d 983, 987, 8 Appleman, Insurance Law and Practice, s. 4899. p. 364. C.F. Carlile v. Vari, 113 Ohio App. 233, 177 N.E.2d 694. The view that liability is limited to interest on the amount of the policy limit is generally supported by the older cases. * * * Some of the cases cited in support of this view contain no discussion of why the insurer's liability for interest is restricted to interest on the amount of the policy limit."
(This is the same criticism made of Roth by the defendant in that no discussion or reasons are given for its determination).
Further,
"Some of the cases cited in support of this rule * * * have been impliedly overruled by later cases in the same jurisdiction. To the extent that there is any modern trend, it is in favor of the rule that the insurer's liability for interest extends to interest on the entire amount of the judgment * * *"
Therefore, on the authority of Roth and the rationale underlying the first discussed position on this subject, the court holds that the language, "all interest accruing after entry of judgment," in the policy issued by Public Service to Stallone means all interest on the entire judgment irrespective of the policy limits. Public Service, therefore, is required to pay interest on the $60,500 judgment from the date of its entry until the date the insurance proceeds were paid into court.
The insurance policy issued by Seaboard to Root contained a subrogation clause for any payments made under its medical coverage. Germer agreed to the following provision in the proof of loss signed by her:
"The undersigned has caused this proof to be executed for the purpose of inducing said Insurance Company to pay the claim as *145 asserted and hereby assigns and subrogates the said Insurance Company to all rights and causes of action the undersigned has against any person or organization to the extent of the payment hereunder and the undersigned shall do what is necessary to secure such rights and shall do nothing to prejudice such rights."
At the oral argument, the plaintiffs have abandoned their contention that the subrogation clause was void as against public policy in light of Busch v. Home Ins. Co., 97 N.J. Super. 54 (1967), where the Appellate Division reaffirmed a decision in Smith v. Motor Club of America, 54 N.J. Super. 37 (Ch. Div.) affirmed 56 N.J. Super. 203 (App. Div. 1959), certification denied 30 N.J. 563 (1959), which held such clauses are valid.
As to Seaboard's claim that it is entitled to recovery of the $2,000 less attorney's fees, no New Jersey case has been cited to the court which would compel this result. Moreover, many of the cases cited in Seaboard's brief are distinguishable from the case at bar. Here the subrogor did not agree to permit the subrogee to recover pro tanto. In this case the fact that plaintiff was diligent in prosecuting the court action to a successful conclusion is significant. Since she only recovered approximately one-sixth of her judgment in this proceeding, equitable principles compel the court to conclude that Seaboard recover one-sixth of the $2,000, or $333, less an attorney's fee of one-third of the $333 or $111, less one-thirtieth of the cost incurred in the original trial, excluding the cost in the Appellate Division, or $30 plus one-thirtieth of the interest on the entire judgment.