IN THE MATTER OF THE ESTATE OF
CLARENCE A. MUNGER, DECEASED.

Argued January 8 and 9, 1973—Decided September 5, 1973.

*Mr. Thomas J. Bitar* argued the cause for appellant William S. Keown, succeeding executor and trustee (*Messrs.*

*Jeffers and Dillon,* attorneys; *Mr. Bitar,* of counsel and on the brief).

*Mr. Peter E. Driscoll* argued the cause for respondents beneficiaries (*Messrs. Brown, Connery, Kulp, Wille, Purnell & Greene,* attorneys for respondent C. Edwin Munger, life tenant; *Mr. George Purnell,* of counsel; *Mr. John Henry Reiners, Jr.,* attorney for respondents George A. Munger and Carol Laycock Munger, contingent remaindermen; *Messrs. Archer, Greiner & Read,* attorneys for respondent F. Morse Archer, Jr., guardian ad litem for unborn and unascertained remaindermen; *Mr. Lee M. Hymerling,* on the brief).

The opinion of the Court was delivered by

HALL, J. The sole issue on this appeal is whether the trustee under the will of the decedent was empowered to invest in real estate by reason of a will clause authorizing investment of the trust corpus "in such *securities* as may, in the judgment and discretion of my said Trustee, seem proper, whether or not such *securities* shall be of the type prescribed by law for the investment of trust funds * * *." (Emphasis supplied). The Camden County Court, Probate Division, held that he was not and the Appellate Division affirmed in an unreported opinion. We granted the fiduciary's motion for leave to appeal, the order below being interlocutory. *R.* 2:2–2(b).

The issue arose by reason of exceptions taken by respondents to the accounts of appellant, the substituted executor and trustee, which related to a considerable degree to a substantial investment of trust funds in real estate. All parties agree that if "securities" cannot be said, under the particular circumstances, to have probably been intended by the testator to encompass real property, the investment was improper. The trial judge, believing that considerable time might be saved by first determining this question, bifurcated the trial of the exceptions and held a plenary hearing on this underlying issue. The extrinsic situation and circum-

stances surrounding the testator and the execution of the will within the guidelines laid down in *Wilson v. Flowers,* 58 *N. J.* 250, 260–263 (1971), as well as the language used in other provisions of the will, were fully explored in order to ascertain that intent.[1] The following picture fairly emerges.

The testator died in 1959. The will was executed in 1955. The scrivener was his personal counsel of many years, the late Walter S. Keown, a well known lawyer in Camden. The instrument was essentially only an updating of his last prior will made in 1944 and drawn by the same attorney. In both instances the entire net estate was left in trust. In 1944 there were two life income beneficiaries — a long time family nurse to a very limited extent and the testator's son Edwin. (The power to invade corpus was given as to the latter.) The nurse had since died and the testator desired the provisions for her to be deleted. In the earlier will, Mr. Keown and a Camden bank were named executors and trustees, with a nephew, George Munger, designated as executor in the event Mr. Keown predeceased the testator. The change desired here was to delete the corporate fiduciary and name Mr. Keown as sole executor and trustee, with his son, the appellant William S. Keown, also an attorney, to succeed him in both capacities if the senior Keown predeceased or died or

---

[1]The trial court order not only declared that the will did not authorize investments in real property, but directed that the purchased property be removed as an asset of the trust estate and replaced by the fiduciary by cash in an amount equal to the sums invested therein plus interest and that the accountings be recast accordingly. (The order has been stayed pending appeal.) The details of the purchase, the existence and extent of any loss and the amount of any surcharge were not tried out below and the matter of the appropriate remedy has not been presented on appeal. *See* 6 *New Jersey Practice*, Clapp, Wills and Administration (3rd ed. 1962) § 1009. The parties agree that the only issue here is that of authority and their argument is so limited. We therefore deal solely with that question and consider that any other aspects of the trial court's order are not before us.

failed to act during the administration. (Mr. Walter Keown died a few months after the testator).

These were the only significant changes in the 1955 instrument. Other than to adapt the various paragraphs to the changes, it is essentially a copy of the earlier document. The quoted investment clause is identical, as are the other provisions granting or defining other powers of the fiduciary. Generally speaking, these latter comprise those customarily found in wills providing for testamentary trusts. Viewing the will as a whole, as well as close consideration of individual provisions, does not convince us that, on the face of the instrument, the term "securities" in the investment clause is intended to include real property. In this connection it is significant that wherever the term is otherwise used in the will, as in provisions prescribing the treatment of dividends, rights and plans for reorganization and the like, the connotation is definitely limited to that of its usual meaning — stocks, bonds and similar obligations.

Conversely, when reference to a broader species of property was appropriate, the terms "investment," "assets" or "property" are used. Thus, the exoneration clause, authorizing the retention of property held at death without liability, refers broadly to "particular assets, both real and personal," "investment" and "property." And the power of sale, including the right to mortgage, repair, lease and so forth, specifically encompasses "all parts of my estate, real, personal and mixed, including any real estate acquired by my said Executor or my said Trustee at and after my death * * *." Appellant puts great stock in the last portion of the quoted clause, but we cannot find it sufficient to broaden the facial meaning of "securities" in the investment clause in the light of the use of that term elsewhere in the instrument. Rather we regard it — a frequently used testamentary expression — as referring to real estate involuntarily acquired by a fiduciary, such as in the case of the foreclosure of a mortgage held by the estate or of realizing upon an otherwise uncollectible obligation.

Turning to the extrinsic evidence introduced below, it is first to be noted that the testator was not a real estate investor in the usual sense. While the greater portion of his estate in 1955 and at death comprised one commercial property in downtown Camden, that property had come to him by inheritance and not by purchase. He and his family before him had operated a department store on the site, but the store had gone out of business and the premises were at these dates under a percentage lease to a chain store.[2] The only other real estate he owned in 1955 or thereafter was his home in Merchantville, which was sold before his death.

The principal testimony offered on behalf of the appellant in attempting to establish that the testator probably intended that "securities" in the investment clause included real property was that of the appellant himself and of Phillip C. Daniels, both of whom were young lawyers associated in practice with the senior Mr. Keown when the 1955 will was drawn and executed. Both participated in conferences with the testator when he asked to have his will updated and appellant was present at its execution. At the senior Mr. Keown's request, they researched the question whether the investment clause in the 1944 will was in any way narrowed by the passage of the prudent man investment

---

[2] The rent received from this property decreased during the latter years of his life and after his death due to the deterioration of retail business in the area, and the occupancy ultimately terminated. Counsel's briefs indicate that the fiduciary finally succeeded in disposing of the property to the city in 1963 for approximately $315,000 and that shortly thereafter appellant purchased the real estate in question — a commercial property in Egg Harbor City subject to a long term lease to a chain supermarket. The price was about $223,000, of which some $75,000 was paid in cash and the balance by assumption of a mortgage carrying interest at 5 1/4%, which was to fall due in 1972. The basic lease expired in 1972, but the tenant had the right to renew for seven additional five year periods at a very substantially decreasing rental. We have not been informed as to what transpired at the due date of the mortgage and the expiration of the basic lease or what has happened with respect to the property since.

statute in the interim. *L.* 1951, *c.* 47, *N. J. S. A.* 3A:15–18 *et seq.* This statute permitted a fiduciary to invest in any investments whatever, including real estate and common stocks, to the extent of 40% of the principal (increased to 60% by *L.* 1961, *c.* 131), subject to the standard of care and judgment which persons of ordinary prudence and reasonable discretion exercise in the management of their own affairs. *N. J. S. A.* 3A:15–19 and –20. Prior to its adoption, fiduciaries were limited to investments specified in the so-called legal list, comprising generally certain types of bonds, preferred stocks, first mortgages and savings accounts. *N. J. S. A.* 3A:15–1 *et seq.* Both statutes yield to any contrary direction in the instrument. *See* 6 *New Jersey Practice,* Clapp, Wills and Administration (3rd ed. 1962) § 1005; *N. J. S. A.* 3A:15–17 and –25. The research resulted in the conclusion, correct as counsel agreed at oral argument (*Fidelity Union Trust Co. v. Price,* 18 *N. J. Super.* 578, 596 (Ch. 1952)), that the prudent man statute would not apply if the same investment clause were used in the new will, just as the clause had negated the effect of the prior law. The identical language was consequently used in the new will. There was no research done, and no consideration given, as to the matter of the extent of the latitude granted by reason of the use of the term "securities" in the clause or as to the meaning of that term. And there was no evidence as to what was intended when "securities" was used in the 1944 will.

██ Both witnesses testified that the testator expressed the desire that the executor and trustee be able to do with his property after death the same as he could do during his lifetime in order to fully provide for his son, who was the testator's principal concern and object of bounty. When the will was reviewed with the testator prior to execution, the senior Mr. Keown assured him that the will so provided and that the investment provision remained as previously despite the passage of the prudent man statute. There was no discussion or mention of the word "securities" or its

meaning. The truth of the matter is, as counsel agreed at argument, that no one thought about the meaning or effect of "securities" or the authority to invest in real property. The focus of the 1955 research, consideration and discussion was rather confined to the fiduciary not being bound by the prudent man statute, with its percentage limitation on investment in nonlegals. The mere fact that the testator did not want his fiduciary bound by this statute does not of itself establish that he desired to authorize him to invest in real estate.

The obligation of a court, when a question is presented such as is involved here, is to effectuate the probable intent of the testator when consideration of the will as a whole together with extrinsic evidence, demonstrates, under all the circumstances, that a patent or latent ambiguity exists in the language used and such intent, overcoming the mere literal reading of the instrument, is thereby made "manifest." *Wilson v. Flowers, supra* (58 *N. J.* at 260). This power must be most carefully exercised and should not be utilized unless the court is thoroughly convinced that it is required — the need for its exercise must be "manifest." Otherwise its exercise would amount to varying the terms of a will as distinguished from merely effectuating a testator's intent. Here we are not so convinced. Neither consideration of the will itself nor the extrinsic evidence offered is sufficient to satisfy us that the testator probably intended the term "securities" in the investment clause to include real estate.

It may be added that "securities" is a term in common parlance with the well-known connotation to laymen of stocks, bonds, debentures, mortgages and other like evidences of secured and unsecured debt and ownership. *See* 3 *Scott on Trusts* (3rd ed. 1967), § 227.14, pp. 1852–1853. One can hardly conceive of a layman, let alone a lawyer, believing that the term, as distinct from broader words such as "investments," "assets" or "property," includes interests in real estate. And in this case it is significant that wherever else "securities" was used in the will, it definitely carried the

connotation just referred to. It is a general rule of will construction that "the same words in different parts of a will, used to express a common purpose, are presumed to have been used in the same sense." *Peer v. Jenkins,* 102 *N. J. Eq.* 235, 238 (E. & A. 1928). Although judicial interpretation of the breadth of "securities" in a will may vary to some degree depending on the particular context, language and circumstances of the instrument under review, it is safe to say that, by the weight of authority, ordinarily the term does not include real estate. *Pratt v. Worrell,* 66 *N. J. Eq.* 194, 201 (Ch. 1904); 5 *New Jersey Practice,* Clapp (*supra*) §§ 229, 237; 4 *Page on Wills* (Bowe-Parker rev. 1961) § 33.37. *Cf. Pennsylvania Company for Insurances v. Board of National Missions,* 139 *N. J. Eq.* 71 (Ch. 1946), affirmed o.b. 141 *N. J. Eq.* 359 (E. & A. 1948); *Zwoyer v. Hackensack Trust Co.,* 61 *N. J. Super.* 9 (App. Div. 1960); *Fidelity Union Trust Co. v. Price, supra* 18 *N. J. Super.* 578, affirmed in part and reversed in part, 11 *N. J.* 90 (1952). Moreover, the law has been conservative and strict in generally holding that a fiduciary may not properly invest trust funds in real estate without specific authority given by statute, judicial permission, or the instrument itself, by reason of the undue amount of risk and speculation involved and the need for business management talents to make such property productive. *Bogert, Trusts and Trustees* (2nd ed. 1960) § 678; 3 *Scott on Trusts, supra,* § 227.6, pp. 1817–1818. *See also Restatement, Trusts 2d* (1959) § 227 and comments thereto. All of this demands much stronger evidence than that presented here before a court would be justified in holding that "securities" was probably intended by this testator to include real property.

The judgment of the Appellate Division sustaining the order of the County Court, Probate Division, is affirmed to the extent that the order declared that the will does not authorize the investment of trust funds in real property.

*For affirmance* — Chief Justice GARVEN, Justices JACOBS and HALL, and Judges CONFORD and LEWIS—5.

*For reversal* — None.