## TRANSAMERICA INSURANCE COMPANY, Plaintiff,

v.

### William S. KEOWN, Defendant,

and

### Marguerite Bossle, Executrix of Estate of W. Louis Bossle, Intervening Defendant,

and

### C. Edwin Munger, F. Morse Archer, Jr., guardian ad litem, George Munger and Carol L. Ober, Intervening Defendants.

### Civ. A. No. 75–0851.

United States District Court,
D. New Jersey.

March 27, 1978.

On Motions to Settle Form of Order
June 16, 1978.

Montano, Summers, Mullen & Manuel, Cherry Hill, N. J., for plaintiff.

M. Gene Haeberle, Camden, N. J., for defendant William S. Keown.

William C. Gotshalk, Camden, N. J., for intervening defendant Marguerite Bossle.

Paul A. Mainardi, Brown, Connery, Kulp, Willie, Purnell & Greene, Camden, N. J., for C. Edwin Munger, intervening defendant.

Jeff S. Masin, Archer, Greiner & Read, Haddonfield, N. J., for F. Morse Archer, Jr., guardian ad litem.

M. Jefferson Davis, Reiners & Davis, Camden, N. J., for intervening defendants George A. Munger and Carol L. Ober.

### OPINION

BROTMAN, District Judge.

Plaintiff, Transamerica Insurance Company, instituted this action against defendant, William S. Keown, Esq., seeking a declaratory judgment, 28 U.S.C. § 2201, determining the rights and liabilities of the parties under the terms of the insurance policies issued to defendant. There is over $10,000 in controversy. Jurisdiction is conferred upon this court by diversity of citizenship, 28 U.S.C. § 1332. This matter is before the court on the motion for summary judgment of intervenors, C. Edwin Munger, F. Morse Archer, Jr., Guardian ad litem, George Munger, Carol L. Ober, Marguerite Bossle, and defendant William S. Keown, Fed.R.Civ.P. 56. Intervenors are beneficiaries of the will and trust of Clarence A. Munger.

### FACTS

Mr. Keown is the Succeeding Trustee of a trust created by the will of Clarence A. Munger. The will empowered the trustee to invest the corpus

> in such securities as may, in the judgment and discretion of my said Trustee, seem proper, whether or not such securities shall be of the type prescribed by law for the investment of trust funds. . . .

Prior to October 1968, Mr. Keown filed his accounts as Succeeding Executor of the will and as Succeeding Trustee. Supplemental accounts were filed on September 30, 1970.

Exceptions were filed by the beneficiaries of the Trust and the Will, intervenors herein. The central contention of the exceptions was that the will did not give the Succeeding Trustee the power to invest in real estate. The Camden County Court, Probate Division, found for the beneficiaries. This decision was affirmed by the Appellate Division of the Superior Court of New Jersey and by the Supreme Court of New Jersey. *In re Munger*, 63 N.J. 514, 309 A.2d 205 (1973). On July 30, 1974, Judge Brown of the Camden County Court surcharged defendant Keown in the amount of $199,142.46, including amounts for unauthorized investments in real estate and other charges.

The intervenors and Succeeding Trustee Keown contend that the terms of the policy require the plaintiff to provide coverage for the judgment of the Probate Court.

### CONSTRUCTION OF THE INSURANCE POLICY

Clause I of the policy, "Individual Coverage," requires the company to pay:

> all sums which the insured shall become legally obligated to pay as damages because of any act or omission of the insured, or of any other person for whose acts or omissions the insured is legally responsible, and arising out of the per-

formance of professional services for others in the insured's capacity as a lawyer.

. . .

Intervenors contend that this clause is ambiguous in defining the scope of acts arising out of the performance of professional services for others and that the clause should be read expansively to include the work of Mr. Keown as a fiduciary.

There are certain "grey areas" which are difficult to classify as "the professional services" of a lawyer. *See, Bancroft v. Indemnity Insurance Co. of North America*, 203 F.Supp. 49 (W.D.La.), *affirmed*, 309 F.2d 959 (5th Cir. 1962). *Bancroft*, a case cited by the intervenors, involved an insurance policy for an accountant with a provision very similar to Clause I of the instant policy. The court held that the term "professional services" of an accountant was broad enough to include quasi-legal advice on taxes, which fell within a "twilight zone" where both accountants and lawyers find some common ground. It went on to say:

We ask this pertinent question: Had defendant not undertaken to insure against the risk of professional liability for negligence in rendering an opinion as to tax consequences, knowing full well that C.P.A.'s give such opinions every day, why was this not made a specific exception or exclusion in the insurance contract here in view of continuing disagreement between the two professional groups as to appropriate spheres of services for each? *Bancroft, supra* at 56–57. Furthermore, the court feared that without interpreting the insurance agreement broadly, innocent clients damaged by a C.P. A.'s professional negligence would be left unprotected. *Id.* at 57.

In interpreting the insurance policy before this court, ambiguities must be construed liberally in favor of the insured, and the insured should not be subjected to hidden pitfalls. *Fidelity & Casualty Co. of N. Y. v. Carll and Ramagosa, Inc.*, 243 F.Supp. 481, 486–87 (D.N.J.1965), *appeal dismissed*, 365 F.2d 303 (3rd Cir. 1966). However, unlike *Bancroft*, the insurance company herein, recognizing that lawyers often act as fiduciaries, has attempted to cure possible ambiguity in Clause I by adding a section which specifically covers fiduciary exposure. Clause IV, entitled "Fiduciary Coverage" in boldface type, is situated immediately to the right of the Individual Coverage Clause in the same size type on the first page of the policy. Thus, there is no hidden pitfall. It states:

When the insured acts as an administrator, conservator, executor, guardian, trustee, or in any similar fiduciary capacity, his acts and omissions in such capacity shall be deemed for the purposes of Insuring Agreement I to be the performance of professional services for others in the insured's capacity as a lawyer, but only to the extent that such acts and omissions are those for which in the usual attorney-client relationship the insured would be legally responsible as attorney for a fiduciary.

This explicit clarification of fiduciary coverage distinguishes this case from *Bancroft*. An insurance contract must be read as a whole giving effect to all the parts thereof. *Feldman v. Urban Commercial, Inc.*, 87 N.J. Super. 391, 209 A.2d 640 (App.Div.1965). The court cannot read Clause I broadly while ignoring the plain language of Clause IV. An insurance policy cannot be rewritten by the court, *Last v. West American Insurance Co.*, 139 N.J.Super. 456, 354 A.2d 364 (App.Div.1976), and is not ambiguous simply because it is complex. *National Surety Co. v. Allstate Insurance Co.*, 115 N.J.Super. 528, 280 A.2d 248 (Law Div. 1971).

The Fiduciary Coverage Clause eliminates two possible restrictions on coverage in Clause I. First, it establishes that, in acting as his own lawyer, the attorney-fiduciary will be deemed to be performing professional services for others. Second, the insured, when acting as trustee, is covered for his acts and omissions if they are acts normally performed by an attorney even though his title is not that of attorney for the estate or attorney for the fiduciary.

The Fiduciary Coverage Clause itself is unambiguous. It requires the court to fictionalize the insured as two personae—the Trustee and the Attorney—and then to determine if the insured's actions would render him legally responsible as an Attorney to the fictional Trustee. The Law Division of the Superior Court of New Jersey recognized that plaintiff as trustee was acting as his own attorney. *Keown v. West Jersey Title & Guaranty Co.*, 147 N.J.Super. 427, 440, 371 A.2d 370 (Law Div.1977).

Such an interpretation of the Fiduciary Clause eliminates the second problem in *Bancroft, supra.* The *Bancroft* court feared that if the term "professional services" were not read broadly, the innocent clients of the insured would be left without any coverage. In this case, the clients (intervenors) will be able to recover under the Fiduciary Coverage Clause specifically written to meet this type of situation.

The inquiry then must proceed along two lines. First, were the acts for which Mr. Keown was surcharged acts for which he was responsible in his role as an attorney. Second, were the acts such that an attorney would be legally liable for their commission.

## A. THE INVESTMENT IN REAL ESTATE

In its Judgment Order entered July 30, 1974, the Camden County Court surcharged defendant Keown for the following items:

| | |
|---|---|
| Real property in Egg Harbor City, New Jersey | $122,911.00 |
| Accounting fees to Morris Liebman, Morris Liebman & Co., and Liebman and Sandrow | 9,425.00 |
| Illegal contingent witness fees to A. J. Rosenfeld | 14,152.70 |
| Excessive attorney's fees to Emanuel Liebman | 17,281.01 |
| Federal Income taxes attributable to Egg Harbor real estate | 24,245.25 |
| Accounting and appraisal fees ancillary to the investment in real estate | 5,017.50 |
| Payment to David Crabtree, Esq. | 1,400.00 |
| Counsel fees to Mr. Keown | 4,810.00 |
| Total | $199,242.46 |

For purposes of discussion in this section the court will consider only those surcharges directly attributable to the purchase of the Egg Harbor real estate. Such surcharges include the initial $122,911 loss plus the income taxes and the accounting and appraisal fees necessitated by the purchase, or a total of $152,173.75.

### 1. Acts of an attorney

Under the Fiduciary Coverage Clause, it is first necessary to determine if an attorney for the fiduciary would be responsible for the purchase of real estate. The decision to invest in the Egg Harbor property involved the legal conclusion that the term "securities" could be read to encompass real estate. Certainly one of an attorney's prime functions is the interpretation of legal instruments such as wills and trusts. Therefore, the decision to invest in real estate is chargeable to Mr. Keown in his role as attorney for the fiduciary. The charges for income taxes and accounting and appraisal fees can best be considered as damages flowing from the initial act of Mr. Keown as Attorney in misinterpreting the "securities" provision of the will. If Mr. Keown is held to be liable as an attorney for his misreading, these surcharges are damages which would relate back to the original act.

### 2. The Question of Liability

■ Transamerica is liable only for damages flowing from the purchase of the real estate if Mr. Keown "would be legally liable as attorney for a fiduciary." The state court has determined that Mr. Keown is liable as Trustee for the unauthorized investment. A trustee must make good any loss regardless of lack of negligence. *See,* 6 *New Jersey Practice*, A. Clapp, *Wills and Administration* (3rd Ed. 1962), §§ 984 & 1009. Although the state court did find that Keown the Trustee was in fact negligent, *Keown v. West Jersey Title & Guaranty Co., supra* at 443, 371 A.2d 370, no theory of liability has yet been established which would hold Mr. Keown legally responsible as an attorney.

■ If Keown the Trustee were to sue Keown the Attorney under the usual claim of malpractice, the attorney's standard of care is measured by the knowledge and skill ordinarily possessed and exercised by others in the profession. *Stewart v. Sbarro,* 142 N.J.Super. 581, 362 A.2d 581 (App.Div.1976). An attorney is not a guarantor of his opinions. *McCullough v. Sullivan,* 102 N.J.L. 381, 132 A. 102 (E. & A. 1926).

■■ As the plaintiff insurance company noted in its brief, there is no need for an expert witness to establish a standard of care where the matter is regarded as within the common knowledge of laymen. W. Prosser, *Law of Torts* (4th ed. 1971), § 32. The act of interpreting the word "securities" to include real estate falls short of the standard of skill ordinarily possessed by others in the profession. As the New Jersey Supreme Court noted in *In re Munger,* 63 N.J. 514, 521, 309 A.2d 205, 209 (1973) (emphasis added):

> "securities" is a term in common parlance with the well-known connotation to laymen of stocks, bonds, debentures, mortgages and other like evidences of secured and unsecured debt and ownership. . . *One can hardly conceive of a layman, let alone a lawyer,* believing that the term, as distinct from broader words such as "investments," "assets," or "property," includes interests in real estate.

Mr. Keown's professional negligence is accentuated by his failure even to submit the matter to the state court for its instructions. 6 *New Jersey Practice,* A. Clapp, *Wills and Administration,* § 984. Even if there were the slightest doubt that a lawyer of average skill would not have interpreted the word "securities" in the challenged manner, it is patently obvious that the question of whether "securities" includes real estate should have raised enough doubt in the mind of Mr. Keown to have led him to seek a clarification from the court.

■ Summary judgment in negligence cases is exceptional. However, the facts giving rise to the dispute have been well developed by the New Jersey state proceedings. *See Tormo v. Yormack,* 398 F.Supp.

1169, 1171 n. 16 (D.N.J.1975). Where there is no factual dispute as to the conduct of the defendant, and it is clear that that conduct does not conform to what the community requires, the court may decide the question of negligence without a jury. *Prosser, supra,* § 37. The court finds that reasonable men could not differ in finding that Mr. Keown did not conform to professional standards in his interpretation of the powers to invest given to the Trustee.

■ There is also no factual dispute as to whether the negligent interpretation of Mr. Keown the Attorney was the legal cause of the damages. But for the Attorney's misinterpretation, the Trustee would never have purchased any real estate. The loss was a direct result of the initial misinterpretation. Even if the business decision to purchase that particular piece of real estate was also unsound, the conduct of Keown as an attorney was a substantial factor in causing the harm for which he was surcharged. *Restatement of Torts (Second),* § 431. Accordingly, summary judgment shall be granted on this issue.

### 3. Limits of Liability

The plaintiff contends that even if it is liable, liability is limited under Condition 2 of the policy to $50,000 because the claim arises out of one professional service. Condition 2 states:

> Limits of Liability. The limit of liability stated in the declarations as applicable to "each claim" is the total limit of the company's liability for all damages arising out of all acts or omissions in connection with the same professional service regardless of the number of claims or claimants. Subject to the foregoing provision respecting each claim, the limit of liability stated in the declarations as "aggregate" is the total limit of the company's liability hereunder for all damages. . . .

The yearly policies limit damages to $50,000 for "each claim" and $150,000 "aggregate." Focusing only on the damages arising from the negligent purchase of real estate, inter-

venors contend that the insurance policies provide sufficient coverage for all damages despite the $50,000 limit. Intervenors first contend that the Probate Court determined that Keown's liability was $1,078.16 per month for a period from the purchase of the property in June, 1963, until December 31, 1973. However, they offer no explanation as to the purpose of such a division. Surely the Probate Court was not focusing on this insurance policy and determining that a new claim arose each month.

 Intervenors next argue that the decision by Keown to hold the property each year created a new avoidable investment of trust funds in real estate each year and thus that there was a new error each year. However, if the fictional Trustee were now to sue the fictional Attorney for malpractice, he would have to sue for the total loss and could not pursue separate claims for separate years' losses. *See William Blanchard Co. v. Beach Concrete Co.,* 150 N.J.Super. 277, 375 A.2d 675 (App.Div.1977).

Furthermore, while Keown could have mitigated the damages at any point by selling the real estate, the cause of the damage from the point of view of the Attorney's actions was the single negligent interpretation of the will. Courts have differed in interpreting phrases such as "each," "a single," "one" or "an" accident or occurrence in a liability policy limiting liability, but there is general agreement that the cases do not make any distinction based on the exact wording by which singleness is expressed. Annotation, 55 A.L.R.2d 1300, 1301; *Union Carbide Corp. v. Travelers Indemnity Co.,* 399 F.Supp. 12, 15 (W.D.Pa. 1975). "Each claim" can be interpreted in a similar manner. The difference in court decisions is based on whether the court focuses on cause or effect. 55 A.L.R.2d at 1303. The cause of the injury in this case is the Attorney's interpretation of "securities" to include real estate. Surely, this is a single act of the attorney. The majority view would focus on causation and declare this to be but one claim. 55 A.L.R.2d at 1303; *see also Union Carbide Corp., supra*; *Bacon v. Miller,* 113 N.J.Super. 271, 273

A.2d 602 (App.Div.1971); *Wilkinson v. Providence Washington Ins. Co.,* 124 N.J. Super. 466, 472–73, 307 A.2d 639 (Law Div. 1973). The effect is also singular; one piece of real estate lost value to the detriment of a single estate.

Finally, the court notes that premiums are based on the risk insured and the potential amount of liability covered. *Union Carbide Corp., supra* at 17, *quoting St. Paul-Mercury Ind. Co. v. Rutland,* 225 F.2d 689, 692 (5th Cir. 1955). To adopt a theory such as that of intervenors, wherein every moment of failure to correct a prior error of judgment would produce a new claim, could lead to limitless liability, a notion inconsistent with the well-known method of rate computation. *Id.*

Accordingly, the recovery of the Trustee and the intervenors for the surcharges incurred due to the purchase of real estate is limited to $50,000 plus interest.

### B. *ADDITIONAL SURCHARGES*

Mr. Keown was surcharged for an additional $46,968.71 which was unrelated to the Egg Harbor City property. Conceivably, all could be attributable to acts for which an attorney would be responsible. For example, the Attorney arguably should have alerted the Trustee that the method of payment to A. J. Rosenfeld was illegal. However, factual questions do remain as to whether all of the additional surcharges were the responsibility of the Attorney to the Trustee.

Also, factual questions remain as to whether an attorney would be legally liable for the commission of the acts leading to the additional surcharges. Accordingly, summary judgment is not appropriate as to these elements of damages.

As liability has not yet been established for this additional amount, the court need not determine whether these acts would constitute separate claims under Condition 2 of the policy.

## C. ATTORNEYS' FEES

 Intervenors have requested that the court award attorneys' fees and costs pursuant to New Jersey Court Rules, R. 4:42–9(a)(6), which allows such fees in favor of a successful claimant upon a liability or indemnity insurance policy. A federal court sitting in diversity must apply state rules concerning the award of attorney's fees. *Montgomery Ward and Co., Inc. v. Pacific Indemnity Co.*, 557 F.2d 51 (3rd Cir. 1977). However, the plaintiff company has not yet had an opportunity to argue this issue, the case has not been concluded, and the court has before it no affidavits of counsel for amounts claimed. Therefore, this part of the motion will not be disposed of at this time.

## D. CONCLUSION

Partial summary judgment shall be granted in favor of intervenors and against plaintiff declaring that plaintiff is liable for all surcharges related to the purchase of the Egg Harbor property up to $50,000 plus interest and costs.

A full trial on the merits is required as to all other surcharges.

Counsel for the intervenors shall submit an appropriate order.

## ON MOTIONS TO SETTLE FORM OF ORDER

This matter is now before the court on motions of the plaintiff and the intervening defendants to settle the form of order arising from this court's opinion of March 27, 1978. General Rule 22(C). In the March 27 opinion, the court granted partial summary judgment against plaintiff declaring that the insurance company was liable for the surcharge against its insured, defendant William S. Keown, for purchasing the Egg Harbor property, up to the policy limit of $50,000.00 plus interest and costs of suit. In this opinion, the court will consider two questions: (1) whether the plaintiff is liable for the costs of defending the state court action involving Mr. Keown; and, (2) whether the insurance company is liable for interest that has accrued on the state court judgment of July 30, 1974.

The court will first consider the question of defense costs in the state court probate proceeding. In *Burd v. Sussex Mutual Insurance Company*, 56 N.J. 383, 267 A.2d 7 (1970), the court noted that the obligation to defend is generally determined by whether the complaint alleges a basis of liability within the covenant to pay. Since the Probate proceeding could only determine Trustee liability, the duty to defend was not established at the outset. However, the court in *Burd* went on to say that when coverage or the duty to pay depends upon a factual issue which will not be resolved by the trial of the third party's suit against the insured, the duty to defend may depend upon the actual facts determined in a separate declaratory judgment proceeding. *Id.* at 388, 267 A.2d 7; see also *Raday v. Bd. of Ed. of Bor. of Manville*, 130 N.J. Super. 552, 328 A.2d 17 (App.Div.1974). Here, the factual issues of whether Keown's acts were the acts of an attorney and whether he was responsible for those acts in his capacity as attorney for a fiduciary have now been determined.

 In its decision, the court declared that the company must pay the state court judgment up to the limits of liability. By finding that the acts in this case were the negligent acts of an attorney, the court implicitly found that they were "such acts or omissions" for which the company also would be obligated to provide a defense under Insuring Agreement II.[1] This accords with the usual rule that the covenant to defend is directly linked to the covenant to pay. *Burd, supra*, 56 N.J. at 389, 267 A.2d 7; *Deodato v. Hartford Ins. Co.*, 143 N.J.Super. 396, 400, 363 A.2d 361 (Law Div. 1976); *Kielb v. Couch*, 149 N.J.Super. 522,

---

1. That Agreement reads as follows:

II *Defense, Settlement, Supplementary Payments*

With respect to such insurance as is afforded by this policy, the company shall:

(a) defend any suit against the insured alleging such act or omission and seeking damages which are payable under the terms of this policy, . . .

526, 374 A.2d 79 (Law Div.1977); 7A *Appelman, Insurance Law and Practice*, § 4684 (1942).

As counsel for the plaintiff has noted, assumption of Keown's defense in the probate court by Transamerica would have created a conflict of interest. Mr. Keown would desire to create the inference that his acts were those of an attorney, while the insurance company would wish all his actions to be viewed merely as business decisions. However, this does not relieve plaintiff of its duty to defend. The insurance company in such a conflict situation is obligated to provide its insured with independent counsel, or to reimburse its insured for his defense, if it is later determined that the claim was within the covenant to pay. *Burd, supra,* 56 N.J. at 390, 267 A.2d 7; *City Council of Elizabeth v. Fumero,* 143 N.J.Super. 275, 289, 362 A.2d 1279 (Law Div.1976). The court has already determined that Keown's acts subject him to liability as an attorney and that his claim falls within the covenant to pay. Thus the correlative duty to reimburse for the state defense must be found.

Accordingly, the court finds that the plaintiff is liable for the state court defense. The amount of reimbursement will not be determined at this time because the appeals are still proceeding. *Kielb, supra.*

The second matter to be considered is liability for the interest that has accrued on the state court judgment since July 30, 1974. Defendant and the intervenors contend that the amount of interest due is controlled by the terms of the insurance contract. Insuring Agreement II(b) provides in relevant part:

the company shall . . . (b) pay, in addition to the applicable limits of liability:

(1) . . . all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon.

The intervenors note that the partial summary judgment in this case extends insurance coverage to those aspects of the Probate Division judgment which relate to the insured's investment in the Egg Harbor property. These surcharges total $152,173.75.

Based on *Roth v. General Casualty & Surety Co.,* 106 N.J.L. 516, 146 A. 202 (E. & A.1929), *Kraynick v. Nationwide Ins. Co.,* 80 N.J.Super. 296, 193 A.2d 419 (Law Div. 1963), and *Germer v. Public Service Mutual Ins. Co.,* 99 N.J.Super. 137, 238 A.2d 713 (Law Div.1967), the intervenors argue that interest should run from the date of the Probate Court judgment, July 30, 1974, to the present at 8% simple interest on the full $152,173.75 notwithstanding that the limits of liability in the insurance policy were only $50,000.

*Germer, Kraynick* and *Roth* interpreted insurance agreements similar to Insuring Agreement II(b) quoted above. In *Germer,* a judgment of $60,500 was entered against the insured, who had a $10,000 insurance policy. The judgment was appealed and the company did not pay the $10,000 into court until after the affirmance. The court found the company responsible for interest on the entire $60,500 from the time of the original entry of judgment. *Kraynick* and *Roth* involved similar principles.

Plaintiff argues that these cases are inapplicable. In its brief Transamerica states:

each of these cases involves a wrongful refusal to defend an underlying tort action or a failure to pay interest in excess of policy limits based upon a judgment in a tort action.

It claims that no interest should begin to run until the Order entering partial summary judgment in this action is signed, since this case is the only judgment involving William S. Keown as an attorney. As the court held, Transamerica had no obligation to defend in the Probate proceeding and no obligation to pay that judgment unless it was found that Keown was liable as an attorney. Thus, the argument goes, there was no judgment on which Transamerica was liable until partial summary judgment was granted and the obligation to pay interest "after entry of judgment" does not arise until now.

However, while the facts of this case may not be precisely on point with *Roth, Kraynick,* and *Germer, supra,* the same principles are applicable. In essence, the task before this court is to interpret the word "judgment" in Insurance Agreement II to determine whether it refers to the Probate judgment or the declaratory judgment to be entered by this court.

To decide this question, *American Surety Co. v. Campbell,* 123 F.2d 195 (5th Cir. 1941) is directly on point. In that case, five judgments were obtained against the insured in state court. The insurer then sought a declaratory judgment in the federal district court, asserting its non-liability. The federal court determined that the insurance company had to pay the state court judgment, and the question of interest was then raised. The Fifth Circuit first concluded that the amount of interest was not limited by the policy's limit on liability. Of special significance to this case, it held that since interest had been running on the state court judgments and since the insurance contract obligated the company to pay interest accruing after entry of judgment, the company necessarily was obligated to pay the interest accrued on the state court judgment. *Id.* at 196; 20 Appelman, *Insurance Law and Practice,* § 11379.

 This case involves the identical situation. A judgment was entered against the insured in state court. A declaratory judgment action was filed here by plaintiff seeking to determine whether it was liable for the payment of that judgment. This court has decided that plaintiff is liable for the Probate court surcharges and the defense costs. Interest is currently running on those surcharges. Therefore, the clause in the policy requiring the company to pay "all interest on the entire amount of any judgment therein which accrues after entry of the judgment" requires the payment of all interest which has run on the state court judgment.

The court notes that not only did Transamerica begin this action, but it also was made a party to the Probate action. *See* Intervenor's Answers to Plaintiff's Interrogatories, filed December 16, 1975. Transamerica has taken an appeal from the Probate Court judgment to the Appellate Division. Thus, at least since January of 1974, Transamerica has treated the Probate Court judgment as a judgment obligating it to pay. In light of the fact that Transamerica has reasonably treated the Probate Court judgment as the relevant judgment, this court is reinforced in its belief that the term "judgment" in Insuring Agreement II should properly be read as "the Probate Court judgment."

Accordingly, plaintiff is responsible for the interest on the entire $152,173.75 and not just the interest on $50,000. Such a result is consistent with the interpretation of the clause "all interest on the entire amount of the judgment" in Insuring Agreement II in *Germer, supra.* The court concurs in this interpretation. *Appelman, supra,* § 4899.[2]

Accordingly, the court holds that interest shall run from July 30, 1974 on $152,173.75 at 8% simple interest until said amount is paid or deposited in the court. *Germer, Roth,* and *Kraynick, supra.*

---

2. The court also feels that this result is equitable. As of January, 1974, the plaintiff's counsel realized that the decision in *In Re Munger,* 63 N.J. 514, 309 A.2d 205 (1973) required the result that, if Mr. Keown were liable as a trustee, he would also be liable as an attorney for the acts leading to the purchase of the Egg Harbor property. *See,* Answers to Plaintiff's Interrogatories, December 16, 1975. Thus, it was clear before this action was even started that the Probate Court judgment would lead to liability for Keown as an attorney and consequently to liability for Transamerica. Yet the company did not pay, tender, or deposit in the court that part of the judgment equal to company's limit of liability. Therefore, the company must now pay interest on the full amount of the portion of the judgment in question on this motion.