159 N.J. Super. 208 (1978)
387 A.2d 419
CORNELIUS VAN HOUTEN, PLAINTIFF,
v.
NEW JERSEY MANUFACTURERS INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, District Court, Passaic County.
April 10, 1978.
*210 Mr. Alfred E. Fontanella for plaintiff (Messrs. Fontanella, Shashaty, Leonard & Harris, attorneys).
Ms. Linda A. Palazzolo for defendant (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
REISS, P.J.D.C.
The issue before this court is whether a party to a settlement may be awarded counsel fees under R. 4:42-9 (a) (6).
This case arose when plaintiff sued his wife's insurance carrier for failure to provide personal injury protection coverage for his medical expenses and loss of income after an auto accident occurring on February 28, 1977. On October 24, 1977 the parties settled the matter before proceeding to trial.[1] Now plaintiff moves for counsel fees incurred in litigating the suit. Defendant in turn moves for costs, expenses and counsel fees in investigating the matter.[2]

*211 I
Plaintiff's motion is based upon allegations that the defendant insurance company acted in bad faith, breached its fiduciary obligations to plaintiff and continually obstructed the resolution of the claim. This in turn required the services of an attorney to intervene in every phase of the negotiation and suit.
It appears that the plaintiff's primary objections concern (1) the allegedly obstructive and dilatory tactics employed by defendant's adjuster which (2) necessitated the intervention of plaintiff's counsel and the institution of an action at law, to which (3) defendant's attorney later raised the defense of workman's compensation.

II
R. 4:42-9(a) (6) (the rule) provides that counsel fees shall be allowed "in an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." Therefore, the problem turns upon the question of whether plaintiff here was a "Successful claimant."
Unfortunately, upon a careful review of the applicable case law and statutes there is no definition or interpretation of the term "successful claimant." It could be said that plaintiff was "successful" in that he settled for essentially the amount of loss of income he sought from his insurer. Defendant argues, however, that neither party to a settlement wins nor loses; that a settlement is a product of negotiation where both parties may be partially right or partially at fault but the question is never resolved.
In nearly every reported case where counsel fees were awarded under the rule there was an adjudication upon the merits of trial, summary judgment or declaratory judgment. It is to be noted, however, that a party need not prevail on every claim in order to be successful. See Hagains v. GEICO, 150 N.J. Super. 576 (Law Div. 1977).
*212 Counsel for plaintiff takes the position that it would be contrary to the spirit of the rule and the No-Fault Act[3] to require the insured to ignore a settlement offer and insist upon a full hearing. An insured is already a weak party to an insurance contract, and to make him hire an attorney throughout the trial or motion would put him to an even greater disadvantage.
Plaintiff's argument is persuasive. It is incongruous to require plaintiff to bypass a settlement offer and proceed to trial in order to "earn" counsel fees, especially when a settlement and trial would have substantially achieved the same result. Also compelling plaintiff to try the case under these circumstances would be contrary to the strong public policy and judicial commitment that justice be served by encouraging the settlement of claims thereby avoiding or terminating litigation. See Dodd v. Copeland, 99 N.J. Super. 481, 485 (App. Div.), aff'd 52 N.J. 537 (1968); Clarke v. Brown, 101 N.J. Super. 404, 415 (Law Div. 1968); Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div. 1961).

III
There reposes in the trial judge a rather broad discretion as to when and why an award of counsel fees would be proper. This is an exercise where "considerations of an equitable character are weighed." Felicetta v. Commercial Union Ins. Co., 117 N.J. Super. 524, 528-29 (App. Div. 1971). See Maros v. Transamerica Ins. Co., 143 N.J. Super. 307 (Law Div. 1976); N.J. Mfrs. Ins. Co. v. Consolidated Mut. Ins. Co., 124 N.J. Super. 598 (Law Div. 1973). Consequently, in this particular case the court is guided by the underlying principles of the No-Fault Act and the purposes for which R. 4:42-9(a) (6) were adopted.
*213 As to the No-Fault Act, it is well settled that
* * * the purpose of the act is to provide for prompt payment of medical bills, lost wages and property damage without having to await the outcome of protracted litigation. [Harris v. Osorio, 125 N.J. Super. 468 (Law Div. 1973) (supplemental opinion)]
See also, Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475, 479 (App. Div. 1976).
This was furthered in Rybeck v. Rybeck, 141 N.J. Super. 481 (Law Div. 1976), where the court stated:
Among the purposes of no-fault are the reduction of court congestion, the avoidance of the high investigative and administrative costs of handling minor injury claims, and the elimination of the supposedly disproportionately high settlements of such claims. These purposes are all served by handling minor auto injuries out of court and out of the adversary process altogether. [at 496]
See also, Zyck v. Hartford Ins. Group, 143 N.J. Super. 580, 591 (Law Div. 1976).
With regard to R. 4:42-9 (a) (6), it has been uniformly held by the courts that it was adopted in order to prevent or discourage groundless disclaimers by the insurance carrier. Tooker v. Hartford Acc. and Indem. Co., 136 N.J. Super. 572, 576 (App. Div. 1975). See Maros v. Transamerica Ins. Co., N.J. Mfrs. Ins. Co. v. Consolidated Mut. Ins. Co., and Felicetta v. Commercial Union Ins. Co., all supra. In each of the above cases the courts also deemed that counsel fees be awarded with a view towards equity for the insured.
This concept was more fully explained in N.J. Mfrs. Ins. Co. v. Consolidated Mut. Ins. Co., supra. There the court held that
* * * another compelling motivation for this [rule] was the desire of providing more equitably for the assured the benefits bargained for in his contract of insurance without unanticipated expense over and above the premiums paid for insurance protection. [124 N.J. Super. at 601]
*214 Similar to plaintiff's argument in the case at bar, the N.J. Mfrs. Ins. Co. court reasoned:
Our courts have long recognized the disparity in the status of the parties to most insurance contracts, not only as to their bargaining positions but with regard to their economic ability to resist disclaimers and contentions of lack of coverage or exclusion. Commentators have long referred to the doctrine of reasonable expectation in interpreting insurance contracts and in the effort to maintain a reasonable balance between the weaker and stronger parties. [at 601; citations omitted]
Apparently the N.J. Mfrs. Ins. Co. court not only found the rule to act prohibitively (i.e., to discourage disclaimers) but also to act assertively, mandating that the insured be "entitled to receive the benefit of his bargain without additional expense for counsel fees * * *." Id. at 602. The effect of the rule forces the insurer to recognize its fiduciary obligations to its insured without unjust delay and personal expense. It makes the insurance carrier pay for services which it originally should have performed.

IV
Recently the Appellate Division took a step in broadening the scope of the rule. In In re Arbitration of Grover, 151 N.J. Super. 403 (1977), plaintiff, the victim of a hit-and-run accident, filed a demand for arbitration after his insurance carrier refused to honor the claim on the accident. The demand was acknowledged by the carrier and after two hearings the arbitrator ruled in plaintiff's favor. Both parties moved before the Chancery Division; plaintiff moved to enforce the award and defendant moved to vacate it. In that proceeding the judge awarded counsel fees of $5,700 and the insurance carrier appealed. The Appellate Division concluded that
* * * the trial judge's allowance of a counsel fee was a proper exercise of its discretion under R. 4:42-9(a) (6). * * * Although the court specifically found that [defendant] was not acting in bad faith in contesting the arbitrator's decision, it properly allowed the fee in order to make the claimant whole. [at 413]
*215 Although a successful motion to enforce an arbitration award is not identical to a motion for counsel fees after a settlement, the holding in Grover suggests a more liberal attitude on the part of the courts in awarding counsel fees pursuant to the rule.

V
Plaintiff's motion raises a novel issue of law of first impression because of the unusual and distinctive manner in which the case arose. Therefore, this court, within the discretion allowed under the rule, is constrained to render its decision upon very narrow grounds as set forth below.
1. After the accident there was a substantial and unreasonable delay by defendant in concluding its investigation and providing a measure of coverage under No-Fault. Such delay is distinguishable from mere tardiness by an insurer in forwarding payment.
2. This undue delay on defendant's part induced plaintiff to seek the services of an attorney to intercede on his behalf, with the resultant necessity of bringing suit.
3. After the complaint was filed defendant continued to resist coverage under a color of contention which in this case was inappropriate.
4. And finally, after a period of eight months following the accident, defendant, just prior to trial, only then agreed to pay plaintiff an amount closely approximate to the original claim for loss of income coverage sought by the insured.
Because of these particular circumstances this court believes that plaintiff, as a party to a settlement, would be deemed to come under the umbrella of the term "successful claimant" as provided by the rule.
A denial of counsel fees, in this particular case, would thwart the underlying public policy that insurers not raise groundless disclaimers, abandon their insured and induce costly and protracted litigation. Guided by the language of N.J. Mfrs. Ins. Co. and Grover, supra, it also would be inequitable that plaintiff lose the benefit of his bargain, be denied counsel fees, and not be made whole merely because his attorney settled for an amount approximating that for *216 which he originally claimed. To require an insured to fully litigate his claim to a successful adjudication essentially because his accumulated counsel fees could not otherwise be obtained is contrary to the principles of the rule and the spirit underlying the No-Fault Act. Rather, it is the opinion of this court that an award here would more equitably serve the principles and spirit upon which No-Fault is founded.

VI
Defendant's motion is based upon its assertion that legal fees, costs and investigatory expenses were necessitated because plaintiff's counsel failed to submit the necessary medical records and information from plaintiff's doctor. Also, defendant states that as there was a serious dispute concerning plaintiff's lost wages, defendant was obliged to send an investigator to plaintiff's employer to ascertain the proper amount of wages lost. This also required additional costs and expenses in subpoenaing the doctor, the doctor's wife and plaintiff's employer.
N.J.S.A. 39:6A-13(g) provides that
In the event of any dispute regarding an insurer's * * * right as to the discovery of facts about the injured person's earnings or about his history, condition, treatment, dates and costs of such treatment, * * * [the] court may protect against annoyance, embarrassment or oppression and may as justice requires, enter an order compelling or refusing discovery, * * *; the court may further order the payment of costs and expenses of the proceeding, as justice requires.
In rebuttal, plaintiff points out that at the time of the suit his physician was seriously ill and had ceased to practice. Now it seems that the doctor has recently died. Further, plaintiff's attorney notes that the crux of plaintiff's claim lay with the income continuation benefits withheld and not the medical ones.
*217 It should be noted that the affidavits from defendant's attorney and investigator show that approximately one-half of the fees and costs expended arose after the case was settled on October 24, 1977.
Upon review of the discovery section of the No-Fault Act it is clear that the burden of investigating personal injury claims rests primarily with the insurance carrier and not with the insured. N.J.S.A. 39:6A-13 et seq. Under the act the injured person is essentially required to
* * * sign all forms, authorizations, releases for information * * * which may be necessary to the discovery of the above facts, in order to reasonably prove the injured person's losses. [N.J.S.A. 39:6A-13(f)]
This court is satisfied that plaintiff substantially complied with these obligations. The act enables the insurance carrier to obtain lost earnings statements from the claimant's employer. N.J.S.A. 39:6A-13(a). Similarly, the carrier is entitled to substantial discovery from the claimant's doctor, hospital, clinic, etc. or from the carrier's own physician. See N.J.S.A. 39:6A-13(b) and (d).
If defendant encountered difficulty with such discovery, then it ought to have sought the appropriate relief from the plaintiff's doctor and/or employer. N.J.S.A. 39: 6A-13(g).
Defendant also seeks attorney's fees under N.J.S.A. 39:6A-13(g). However, this paragraph does not afford them.
For the reasons stated herein, defendant's motion is denied and plaintiff's motion is granted.
This court is not unaware of the counsel fees sought by plaintiff's attorney as set forth in his affidavit of services. However, in view of the amount of the claim at issue and that obtained on settlement, this court is constrained to find that an award of $250 is reasonable and proper.
Finally, it should be noted that during the settlement negotiations the rights of both parties to make their respective motions were specifically preserved.
NOTES
[1] A stipulation of dismissal was subsequently filed by defendant. The stipulation dismissed the case only as to medical expenses and lost wages and did not purport to affect any other rights accruing to the plaintiff under the PIP provisions of the insurance policy issued by the defendant.
[2] At the hearing defendant's attorney explained that the parties had settled for $1001. This amount represented the loss of income claimed by plaintiff.
[3] The New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq.