**TRANSAMERICA INSURANCE COMPANY, Plaintiff,**

v.

**William S. KEOWN, Defendant,**

**and**

**Marguerite Bossle, Executrix of Estate of W. Louis Bossle, Intervening Defendant,**

**and**

**C. Edwin Munger, F. Morse Archer, Jr., Guardian ad litem, George Munger and Carol L. Ober, Intervening Defendants.**

Civ. A. No. 75 0851.

United States District Court, D. New Jersey.

May 8, 1979.

---

**6.** See note 1 *supra.*

Arthur Montano, Montano, Summers, Mullen & Manuel, Cherry Hill, N.J., for plaintiff.

M. Gene Haeberle, Camden, N.J., for defendant William S. Keown.

William C. Gotshalk, Camden, N.J., for defendant/intervenor Marguerite Bossle.

Paul A. Mainardi, Brown, Connery, Kulp, Willie, Purnell & Greene, Camden, N.J., for C. Edwin Munger, intervening defendant.

Jeff S. Masin, Archer, Greiner & Read, Haddonfield, N.J., for F. Morse Archer, Jr., Guardian ad litem.

M. Jefferson Davis, Reiners & Davis, Camden, N.J., for intervening defendants George A. Munger and Carol L. Ober.

BROTMAN, District Judge.

In this declaratory judgment action pursuant to 28 U.S.C. § 2201, plaintiff Transamerica Insurance Company seeks a determination of the rights and liabilities of the parties under the terms of an attorney's malpractice insurance policy issued to defendant William S. Keown, Esquire. Jurisdiction is conferred upon this court by diversity of citizenship, 28 U.S.C. § 1332.

The majority of the issues raised in this case were decided upon the summary judgment motion of defendant and intervenors, and reported at 451 F.Supp. 397 (1978). Trial by the court was had on the remaining issues on June 27–30 and July 5, 1978, and the parties have submitted post-trial briefs. This opinion will constitute the court's findings of fact and conclusions of law. Fed.R. Civ.P. 52(a).

*Introduction*

The court refers to its opinions of March 27, 1978, and June 16, 1978, for the full factual background and history of the case.

Defendant Keown is the Succeeding Trustee of a trust created by the will of Clarence A. Munger. The intervenors are beneficiaries of that will and trust. Keown, as Trustee, was surcharged for the following items in a Judgment Order entered July 30, 1974, by the Camden County Court:

| | |
|---|---|
| Real property in Egg Harbor City, New Jersey | $122,911.00 |
| Federal Income Taxes attributable to Egg Harbor real estate | 24,245.25 |
| Accounting and appraisal fees ancillary to the investment in real estate | 5,017.50 |
| Counsel fees to Mr. Keown | 4,810.00 |
| Accounting fees to Morris Liebman, Morris Liebman & Co., and Liebman & Sandrow | 9,425.00 |
| Illegal contingent witness fees to A. J. Rosenfeld | 14,052.70 |
| Excessive attorney's fees to Emmanuel Liebman | 17,281.01 |
| Payment to David Crabtree, Esquire | 1,400.00 |

In the court's prior opinions, the respective rights of the parties concerning the first three items, relating to the real estate, were defined. Furthermore, Mr. Keown's insurance company does not have to "reimburse" him for amounts he overpaid himself. Accordingly, only responsibility for the latter four items is at issue. Additionally, the defendant and intervenors seek attorney fees incurred by them in this action and in the state court action.

This court's opinion on the summary judgment motion creates the legal framework for the decision concerning the remaining surcharges. In interpreting the Fiduciary Coverage Clause in the Transamerica insurance policy, it was stated that

[T]he inquiry must proceed along two lines. First, were the acts for which Mr. Keown was surcharged acts for which he was responsible in his role as an attorney. Second, were the acts such that an attorney would be legally liable for their commission. 451 F.Supp. at 401.

The same two questions will form the basis for this opinion. As to each surcharge, it must be determined whether the function was one an attorney might perform, and whether an attorney performing the function as Keown did would be liable.

*Findings of Fact*

Mr. Keown testified that he was admitted to the New Jersey Bar in 1950. His only education in accounting came from one basic accounting course in undergraduate school. Transcript (Tr.) I, 60–61. Before undertaking to work on the Munger estate, he had never handled a Federal estate matter. He had also never prepared a Federal income tax return or a State inheritance tax return for an estate as large as the Munger estate. Finally, he had never handled a tax appeal of the magnitude involved in the tax appeal related to the Munger estate. Tr. I, 93.

The Probate court judgment of July 30, 1974, surcharged Keown $9,425.00 plus interest for payments for services of Morris Liebman. The basis for the surcharge was that the fees paid to Morris Liebman were unnecessary since Keown should have performed the accounting services within the scope of his own duties.

Morris Liebman testified that he was hired to prepare the final income tax return, the Federal estate tax returns and the State inheritance tax return. Tr. I, 6. Additionally, of his total bill to the estate, about $500 to $750 was attributable to work connected with the Egg Harbor property, and $400 was attributable to the preparation of tax returns for Edwin Munger, one of the beneficiaries. Liebman also established a bookkeeping system for the estate, for which he did not bill separately.

The Probate court judgment surcharged Keown $17,281.01, plus 5% uncompounded interest, for all but $2000 of the fees paid to Emmanuel Liebman. The court found his fees excessive and stated that they were paid without court approval.

Emmanuel Liebman was hired to take a tax appeal on certain real estate in Camden owed to the estate, and to research other smaller tax matters. Since both he and Keown felt it would be difficult to reduce the real estate valuation, they agreed to a 20% contingency fee arrangement on federal tax savings. Despite the perceived difficulties, Mr. Liebman was successful in achieving a federal tax savings of $80,150, Tr. II, 65, hence producing his fee. There was an additional state tax savings of over $5000 for which he received no additional compensation.

The Probate court imposed a surcharge against Keown for payments to David Crabtree, Esquire, in the sum of $1400, on the basis that his services were related to the preparation of the accounts of the Succeeding Trustee and should have been performed by Keown himself. Further, no affidavit of services was filed and the fees were not submitted to the court for approval before payment. Crabtree was engaged in September, 1966, to prepare or assist in preparing the probate and first accountings for the Munger estate to be filed in the Probate court. Tr. III, 6. He is a specialist in estate planning and probate matters. Tr. III, 4–5.

Finally, the Probate court surcharged Keown $14,052.70 plus interest for witness fees paid to A. J. Rosenfeld. The court found such payments to be illegal in that they were paid on a contingency basis to a witness in a tax appeal proceeding.

The fee arrangement for Rosenfeld for a 1959 tax appeal was formulated by defendant Keown's father, Walter S. Keown, the original trustee of the estate, and continued by defendant. The arrangement was that 50% of the tax savings would be the fee, and that amount would be shared by Walter Keown and A. J. Rosenfeld. Tr. I, 75. In this instance, $9,276.34 was remitted to William Keown pursuant to the established fee arrangement. Tr. I, 84. Keown stated that he took this amount as a credit against what the estate owed him.

As to attorney fees in the state court proceeding, the court has already determined that the plaintiff's insurance company is liable for the costs of the state court defense. 451 F.Supp. at 405. Only the amount need be determined herein.

*Conclusions of Law*

*A. Surcharges*

The expert testimony as to the responsibility of an attorney in incurring these surcharges and the existence of malpractice was limited. Emmanuel Liebman testified for plaintiff that an attorney unskilled in accounting and taxation such as Keown would have been foolish to undertake a tax appeal such as the one Liebman performed for the estate. Tr. II, 69. He also stated that a prudent attorney acting as trustee would have hired Mr. Rosenfeld and Morris Liebman to perform the services they did in connection with this estate. Tr. II, 74.

Daniel Bell, Jr., testified as defendant and intervenors' expert. He stated that the hiring of Rosenfeld as a witness on a contingency basis would be malpractice as

would the indirect receipt of fees from the witness. Tr. V, 15, 19. Also he felt that it was negligent for an attorney not to advise an executor to apply to the court for instruction prior to engaging an expert to testify. Tr. V, 16.

As to the fees paid to Emmanuel Liebman, Mr. Bell testified that this payment also was improper because prior court approval was not obtained. Tr. V, 21. While it would have been preferable to pay on a time basis, the fact that his fees were paid on a contingent basis is not alone sufficient for malpractice. Tr. V, 22.

As to the fees paid to Mr. Crabtree, Bell stated that it was not wrong to engage outside counsel, but that it was wrong to pay him without first securing the approval of the court. Tr. V, 24. The fees of Morris Liebman were indicated to have raised the same impropriety, lack of prior court approval. Tr. V, 26–28.

In view of the above, the court must first inquire whether the acts for which Keown was surcharged were the acts of an attorney. As to the hiring of Emmanuel Liebman, Morris Liebman, and David Crabtree, the court finds these were not attorney's acts. A trustee would normally know the limits of his own education and experience, and hire outside expert assistance without first consulting his attorney. The court is guided on this point by the case of *Smith v. Travelers Indemnity Co.*, 343 F.Supp. 605, 610 (M.D.N.C.1972), which held a malpractice insurer not liable where the attorney's activity in question "requires no legal skill or training and indeed, is done every day by thousands of individuals who are without legal training . . . ."

On the other hand, when a tax appeal is being taken and an attorney is involved, it would be the attorney's responsibility to arrange for witnesses and explain that a witness cannot be paid on a contingent fee basis. Thus, Keown as attorney would at most be liable for the Rosenfeld surcharge.

The court notes that when an individual such as Keown is wearing two hats and acting both as trustee and as his own attorney, it is difficult for a court to separate these two roles, as necessitated by this insurance policy.

However, even assuming that all of Keown's actions in hiring the various professionals were taken upon the advice of Keown the attorney, and that determination of the extent of coverage rests on the second line of inquiry, the nature of the attorney's acts, the result in this case would not differ.

At the outset, the court should note that Keown, in his role as attorney, can only be held liable to Keown as trustee, and thus collect on the Transamerica policy, if Keown the attorney was negligent in rendering his opinions. Intervenors have provided no persuasive legal support for their theory of trust accountability as a basis of the attorney's liability to the trustee.

In its decision of March 27, 1978, the court, is discussing one instance of professional malpractice by Mr. Keown, stated

Mr. Keown's professional negligence is accentuated by his failure even to submit the matter to the state court for its instructions. 451 F.Supp. at 402.

However, by that statement, the court did not intend to imply that the mere failure to obtain prior instructions would make an attorney liable for every action he counseled a trustee to take. The original piece of advice must be so questionable that a reasonable attorney could not be comfortable without getting outside affirmation.

Putting the burden of proving lack of negligence on plaintiff, the court finds this burden satisfied as to the surcharges for David Crabtree, Emmanuel Liebman, and Morris Liebman. Plaintiff demonstrated that Keown, whether as attorney or as trustee, was reasonable in believing himself unable to perform the functions that he engaged Crabtree and the two Liebman's to perform. In the 1960's, Keown obviously lacked the prior experience and education to handle an estate the size of the Munger's alone. Even if Keown's advice to hire outside counsel and accountants was in his role as attorney to the trustee, the court holds such advice does not fall below the relevant

standard of care. Unquestionably, the Probate court found Mr. Keown's "advice" to be erroneous. But as this court noted at 451 F.Supp. 402, an attorney is not a guarantor of his opinions. Through the testimony of Mr. Keown and Mr. Liebman, plaintiff has demonstrated that Keown's "advice" to hire competent outside experts without prior court approval was reasonable and does not fall below that level of skill ordinarily exercised by others in the profession. The testimony of Mr. Bell to the contrary does not change the court's opinion on this point.

Further, the court does not find Keown negligent in agreeing to pay Emmanuel Liebman a contingent fee. The Probate court merely stated that the fees were excessive, and did not condemn them for being contingent.

■ As to the fee arrangement with A. J. Rosenfeld, the court does find Keown negligent as an attorney because he should have advised the trustee that witness fees could not properly be paid on a percentage basis, nor through a kickback arrangement. Thus, here there is much more than a mere failure to obtain prior court approval. Instead, there are troubling questions as to the propriety of this fee arrangement. The failure to seek court approval here accentuates the negligence of Keown, but does not create it.

The total surcharge was for the full amount of $14,052.70 paid to A. J. Rosenfeld. However, the testimony indicates that Keown already received $9,276.34 of this amount remitted to him by Rosenfeld. He cannot recover this amount both from Rosenfeld and the insurance company. Thus, while Keown claims that this $9,276.34 was taken as a credit on his application for fees in the Probate court, that discrepancy is for the state courts to resolve. In this action, this court will only declare that the insurance company is liable for $4,776.36, plus interest, as assessed by the judgment of the Probate court.

Transamerica has argued that no additional liability should be assessed beyond that in the summary judgment opinion because the representation of the estate created one single continuous liability. However, the advice to pay Rosenfeld in the illegal manner took place at a different time and in a manner totally disconnected from the advice as to the propriety of the real estate purchase. One client may have more than one malpractice claim against an attorney who represents him over a span of more than ten years. Thus, the court rejects this defense.

Also, plaintiff has raised exclusion (a) of the insurance policy for "dishonest" acts for the first time in his post-trial brief. The court rejects this defense for its untimely assertion and also because the policy does not equate the illegality of a contingent witness fee with dishonesty.

### B. Attorney Fees

#### 1. State Court

■ Transamerica argues that counsel fees for the work of Louis Bossle and M. Gene Haeberle in the state court action should be reduced because (1) certain services of Mr. Bossle were performed prior to notification of plaintiff, (2) the fees were excessive, (3) the fees were for services normally incurred by an executor, or they relate to the entire probate proceedings and not just to the exceptions by which liability was found, and (4) the records are incomplete.

First, the timeliness of the notification is irrelevant. Transamerica was obliged to provide separate counsel in any event, 451 F.Supp. 405, and was not harmed by the lateness of the notice. Second, the reasonableness of the fees has already been determined in the Probate court and will not be reexamined here. Third, the insurance company is obliged to defend even frivolous claims. At the outset, any of these surcharges could have led to at least a frivolous claim of attorney's malpractice, since Keown served in both roles. Thus, Transamerica is not relieved of liability by counsel's success in defending against certain exceptions or the fact that certain charges would normally be incurred by an executor. Fourth, the court cannot find the attorneys' records incomplete, as Judge Brown has

already examined these records and found $26,664.54 a reasonable fee. This court will not disturb that ruling.

Accordingly, Transamerica is declared liable for $8,416.39 to the Estate of Louis Bossle, and liable for $18,248.15 to M. Gene Haeberle, which is the full amount of legal fees and disbursements in the state court action as found by Judge Brown. Transamerica is also declared liable for the full amount of fees and disbursements for services rendered by Haeberle on appeal of the state court action since June 30, 1974, which amount cannot be determined at this time since the state action is continuing.

### 2. Federal Court

■ As noted in the March 27 opinion, intervenors and defendant seek counsel fees pursuant to N.J.Ct.R. 4:42–9(a)(6). In this diversity action, the court must follow that state rule. 451 F.Supp. at 404. The rule provides that counsel fees may be allowed in favor of a successful claimant in an action upon a liability or indemnity insurance policy. The fact that the insurance company herein is plaintiff in a declaratory judgment action does not alter the availability of the rule for defendant and intervenors. *N. J. Manu. Ins. Co. v. Consolidated Mutual Ins. Co.*, 124 N.J.Super. 598, 602, 308 A.2d 76 (Law Div. 1973). It applies whether or not the carrier's refusal to extend coverage is made in good faith. *In re Arbitration of Grover*, 151 N.J.Super. 403, 413, 376 A.2d 1308 (App. Div. 1977).

■ Counsel for Transamerica argues that claimants were not successful in this case, since they are recovering only $54,776.36, plus interest, of the $199,242.46 originally sought. The court rejects this contention. Transamerica took the position in this case that no money was owing, despite its virtual acknowledgement in the Probate court that $50,000 would be due. 451 F.Supp. 406 n. 2. Its failure to tender that amount in 1974 is as much a cause of the expenses incurred in this lawsuit as any actions of defendant or intervenors in asserting additional claims. Thus Transamerica may be ordered to pay for at least some of the counsel fees of defendant and intervenors.

Transamerica argues in the alternative that counsel fees should be reduced in proportion to the success of defendant's and intervenors' result. Award of fees under the New Jersey rule is within the trial court's discretion. *Felicetta v. Commercial Union Ins. Co.*, 117 N.J.Super. 524, 528, 285 A.2d 242 (App. Div. 1971). The court will take the success factor into account when it determines the fees due on the basis of affidavits to be submitted. It may well be appropriate to make some reduction in fees, especially for time charges after June 16, 1978, when the form of the order on the summary judgment motion was settled and most of claimant's successful claims were completed.

Accordingly, judgment shall be entered in favor of defendant and intervenors and against plaintiff declaring Transamerica liable for all amounts set forth in this opinion, assuming that the surcharge is sustained in the New Jersey appellate courts. Defendant and intervenors shall submit a motion for attorney fees for this action, supported by the necessary affidavits, by May 29, 1979. This motion will be heard on June 15, 1979.