**TRANSAMERICA INSURANCE COMPANY, Plaintiff,**

v.

**William S. KEOWN, Defendant,**

and

**Marguerite Bossle, Executrix of Estate of W. Louis Bossle, Intervening Defendant,**

and

**C. Edwin Munger, F. Morse Archer, Jr., Guardian ad litem, George Munger and Carol L. Ober, Intervening Defendants.**

**Civ. A. No. 75–0851.**

United States District Court, D. New Jersey.

Jan. 4, 1980.

Robert E. Edwards, Montano, Summers, Mullen & Manuel, Cherry Hill, N. J., for plaintiff.

M. Gene Haeberle, Camden, N. J., for defendant William S. Keown.

William C. Gotshalk, Camden, N. J., for defendant/intervenor Marguerite Bossle.

Paul A. Mainardi, Brown, Connery, Kulp, Wille, Purnell & Greene, Camden, N. J., for C. Edwin Munger, intervening defendant.

Peter E. Driscoll, Archer, Greiner & Read, Haddonfield, N. J., for F. Morse Archer, Jr., Guardian ad litem.

M. Jefferson Davis, Reiners & Davis, Haddonfield, N. J., for intervening defendants George A. Munger and Carol L. Ober.

## OPINION

BROTMAN, District Judge.

This is a declaratory judgment action brought by Transamerica Insurance Company ("Transamerica") pursuant to 28 U.S.C. § 2201, concerning the rights and liabilities of the parties under the terms of an attorney's malpractice insurance policy issued to defendant William S. Keown, Esquire. Jurisdiction is asserted to arise by diversity of citizenship of the parties. 28 U.S.C. § 1332.

This case has a long and complicated history, involving both state court and federal court litigation, which is discussed in the court's prior opinions, reported at 451 F.Supp. 397 (D.N.J.1978), and 472 F.Supp. 306 (D.N.J.1979), and which this court adopts and incorporates herein. However, the court feels compelled to summarize the relevant procedural history of this litigation to the extent that it concerns the motions now pending before this court.

This dispute arose from the conduct of Mr. Keown as the succeeding executor of the will of Clarence A. Munger and the succeeding trustee of a trust created by that will. Exceptions were filed to the accounts filed by Mr. Keown by the beneficiaries of the trust and the will, who are the intervening defendants in this action. The Camden County Court, Probate Division,[1] held that Keown's investment in real estate was not authorized by the pertinent part of the will authorizing the investment of trust corpus "in such securities as may, in the judgment and discretion of my Trustee, seem proper, whether or not such securities shall be of the type prescribed by law for the investment of trust funds." This decision was affirmed by the New Jersey Superior Court, Appellate Division, in an unreported opinion, and also subsequently affirmed by the New Jersey Supreme Court. *In re Munger*, 63 N.J. 514, 309 A.2d 205 (1973). Trial was then held before the Probate Division to determine the amount of the surcharge to be imposed upon Keown for his investment of trust funds in real estate in violation of the will's provision and to dispose of the remaining exceptions to Keown's accounts. The Probate Division

---

1. Under the recent New Jersey court reorganization, this became the Superior Court, Law Division, Probate Part. However for the sake of consistency, it will be referred to as the Probate Division throughout this opinion.

upheld certain exceptions made by the beneficiaries, surcharging Keown a total of $199,142.26 for unauthorized investments in real estate and other charges. After the Probate Division issued that decision, Transamerica initiated the present declaratory judgment action. Transamerica sought, inter alia, a declaration of "the rights, liabilities and legal relationships of the parties in accordance with the facts in this matter and the terms and provisions of the policy or policies of insurance." Plaintiff's Complaint, at 7. The majority of the issues involved in the declaratory judgment action were decided by this court upon summary judgment motion of the defendant and the intervening defendants, as reported in the court's opinion at 451 F.Supp. 397 (1978). Trial was then held on the remaining issues in the federal litigation, and this court issued its opinion on these matters on May 8, 1979. 472 F.Supp. 306 (D.N.J.1979).

After this court issued these opinions, the Probate Division's surcharges were reviewed by the Appellate Division, which in an unreported opinion on July 16, 1979 upheld some but not all of the exceptions approved by the Probate Division. It remanded the case to the Probate Division to make certain changes in its determination in accordance with the order of the Appellate Division. In response to the Appellate Division's opinion, Transamerica filed a motion on August 29, 1979

> for an Order to vacate or, in the alternative, to modify prior Orders of the Court of March 27, 1978, June 16, 1978 reported at 451 F.Supp. 397 (D.N.J.1978) and May 8, 1979 [reported at 472 F.Supp. 306 (D.N.J.1979)] and all further Orders of the Court entered in the above captioned matter.

Plaintiff's Notice of Motion, at 2. On August 31, 1979, intervening defendants George A. Munger and Carol L. Ober also filed a motion to modify the court's opinion and order of May 8, 1979, and submitted a brief in support of their motion and in opposition to Transamerica's motion. While these motions were pending before this court, the New Jersey Supreme Court denied a petition for certification of the Appellate Division's judgment on November 20, 1979, thereby terminating the state court review of the Appellate Division opinion. Thus, the Appellate Division's decision remanding the case to the Probate Division went into effect and the state action is now pending before the Probate Division.

The federal action is presently before the court upon two classes of motions. The first class consist of the motions of Transamerica and George Munger and Carol Ober to vacate or modify prior opinions and orders of this court in this case. The second class of motions, which were made by the attorneys for the defendant and the intervening defendants, concern requests for counsel fees and costs involved in the litigation of this federal action. The court will address these motions seriatim.

I. *The motions to vacate or modify prior decisions of this court.*

The court shall now consider motions of Transamerica and George Munger and Carol Ober to vacate or modify the prior orders of this court in this matter. Although both motions are premised upon the impact of the appeals of the Probate Division's decision in the state court litigation upon the federal declaratory judgment action, the two motions place vastly different characterizations upon the effect of the state court appeals.

The plaintiff argues that "the prior decisions of the United States District Court were based largely on the now reversed or remanded Judgment of the Probate Court of July, 1974," Plaintiff's Brief, at 3, and "since the underlying litigation in the State Court may continue for an additional period of time, any judgment entered in the United States District Court which is founded on anything other than a final State Court Judgment would leave open the possibility of future modifications or reversals." *Id.* The plaintiff proceeds to reason that "the prior Orders of this Court should be vacated or modified to the extent that the underlying issues have been reversed, remanded, or remain at issue in the State Court." *Id.*, at 3–4.

Intervening defendants George Munger and Carol Ober have made a radically different characterization of the effect of the Appellate Division ruling. They incorporated by reference a letter dated August 3, 1979 and written by Peter E. Driscoll, Esquire, counsel for the guardian ad litem, which declares, "It is our position that the decision of the New Jersey Superior Court, Appellate Division, in this matter has a relatively small effect on your previous determinations." The letter lists four effects of the Appellate Division decision, and the movants ask this court to modify its opinion and order of May 8, 1979, in accordance with paragraphs C and D of that letter. They provide:

C. To the extent your previous decision found liability under the insurance coverage with regard to a portion of the fees paid to A. J. Rosenfeld, the Superior Court, Appellate Division, decision would remove that possible liability against the insurance carrier since that surcharge has been reversed by the Appellate Division.

D. The only other area in which the Appellate Division decision may affect your previous determination is with regard to the counsel fee application of Mr. Haeberle and the Estate of W. Louis Bossle. To the extent that in the proceedings on remand in the Superior Court, Law Division, Probate Part, a portion of these fees are directed to be paid from the trust and the estate the amount to be paid by Transamerica would be reduced.

The movants did not ask the court to adopt the other changes recommended in Mr. Driscoll's letter since these modifications would concern the court's 1978 orders, which are the subject of appeals and cross-appeals docketed in the court of appeals.

■ In considering these motions to vacate or modify this court's prior orders, the court has carefully reviewed the course of the state court litigation and its impact upon the federal declaratory judgment action. Having completed its survey of the state and federal court litigation, the court agrees with the analysis of the impact of the Appellate Division's ruling upon the

federal court decision provided in Mr. Driscoll's letter. It is the opinion of this court that the Appellate Division's opinion did not undermine the fundamental basis for this court's prior opinions and the current status of the state court litigation does not mandate that this court vacate its prior orders pending the final disposition of the state court litigation. The New Jersey Supreme Court's denial of certification to appeal the Appellate Division's decision effectively terminated the state court litigation, with the exception of the proceedings to be held in the Probate Division pursuant to the Appellate Division's order, so this court does not believe that the plaintiff's concern with the shifting status of the state court litigation is a valid basis for vacating this court's orders. However, the court will modify its prior orders to reflect the changes actually made by the Appellate Division insofar as they affect this court's prior decisions and the court is empowered to make the appropriate changes.

■ The court would modify its prior opinions to adopt all of the recommendations contained in Mr. Driscoll's letter, if it were so empowered. However, its power to modify the prior opinions and orders is circumscribed by the appeals which were taken of those prior decisions. The 1978 opinions and orders are the subject of an appeal and cross-appeals which were docketed with the court of appeals in 1978. This court has been empowered to exercise jurisdiction over the matters covered in the 1978 decisions pursuant to an order of the court of appeals granting Transamerica's motion to remand the action to the district court for the purpose of having this court act upon the motion to deposit policy limits, which the court denied in its opinion of February 16, 1979, and to rule upon proposed findings of fact and conclusions of law, which the court issued in its opinion of May 8, 1979. Transamerica has also filed a notice of appeal of the court's 1979 decisions, but failed to take the necessary actions to docket the appeal with the court of appeals. Therefore, the court's power to modify its prior opinions extends only to the 1979 opinions,

and not the 1978 ones. Consequently, the court may only adopt the recommendations contained in paragraphs C and D of Mr. Driscoll's letter, as suggested by intervening defendants George Munger and Carol Ober. The other proposed modifications of the court's decisions must be raised with the court of appeals, which has jurisdiction over the matters contained in the 1978 decisions now on appeal.

Thus, the court will make the following modifications of its May 8, 1979 opinion: first, it will strike the liability of Transamerica for the contingent witness fees paid to Mr. A. J. Rosenfeld, which this court set at $4,776.36, plus interest; and second, it will direct Mr. Haeberle and the Estate of W. Louis Bossle to credit Transamerica's liability for counsel's fees in the state court action for any payments of Mr. Keown's attorney's fees which the state courts order the Munger estate or trust to make.

## II. *The Motions for Counsel Fees and Costs.*

This court now turns to the issue of attorneys fees. The court has received requests for attorneys fees totaling $95,242.51 plus $2,262.31 in disbursements made by the attorneys, distributed as follows: Archer, Greiner & Read, $13,461.00; Brown, Connery, Kulp, Wille, Purnell & Greene, $24,640, plus $350.80 in disbursements; C. William Gotshalk, Esquire, $6,173.85, plus $198.75 in disbursements; M. Gene Haeberle, Esquire, $38,991.25, plus $1,707.88 in disbursements; and Reiners & Davis, $11,977.26, plus $4.88 in disbursements. The motions for attorneys fees and costs involved in the federal action were made in response to the court's order of May 8, 1979. The court's order stated in pertinent part, "It is FURTHER ORDERED that plaintiff is declared liable to defendant and intervenors for attorneys fees in the present action, the amount of such liability to be determined by Motion for fees, to be submitted by defendant and intervenors . . . and to be heard by this court." The court subsequently issued an opinion on July 13, 1979 on the defendant's and intervenors'

motions for attorney fees. The court found that "fees for this long-term litigation to reach the amount awarded represents cognizable success by defendant and intervenors in the action," and applying the Third Circuit's principles for setting counsel fee awards, determined that the amount of fees requested by each party would be awarded. However, subsequent to the issuance of that opinion, the court advised all counsel in a letter dated July 24, 1979:

> I have . . . decided to reconsider the award of attorney fees made July 13, 1979. I intend to allow Transamerica to cross-examine attorneys for defendant and intervenors, and that hearing will be held on August 27, 1979 at 9:30 A.M. and continue for the entire day. Transamerica is directed to examine files in counsels' offices before this hearing.

At the request of one of the attorneys, this hearing was rescheduled for September 4, 1979. At that time, the court heard argument on the issue of awarding attorneys fees, and counsel for Transamerica was permitted to examine the attorneys seeking attorneys fees, with the exception of William C. Gotshalk, Esquire, who did not attend the hearing, in order to determine the extent to which their claims for attorneys fees were justified. The court also directed the parties to submit proposed findings of fact and conclusions of law, which the court has now reviewed. This opinion shall constitute the court's findings of fact and conclusions of law on the issue of the entitlement to attorneys fees and costs involved in the federal action.

As the court noted in its March 27, 1979 opinion, "A federal court sitting in diversity must apply state rules concerning the award of attorney's fees. *Montgomery Ward and Co., Inc. v. Pacific Indemnity Co.*, 557 F.2d 51 (3rd Cir. 1977)." 451 F.Supp., at 404. Therefore, the defendant and intervenors base their claim for attorneys fees upon N.J.Ct.R. 4:42–9(a)(6), which states:

> (a) Actions in Which Fee is Allowable. No fee for legal services shall be allowed in the taxed costs or otherwise, except

(6) In an action upon a liability or indemnity policy of insurance, in favor of a successful claimant.

One case which applied the attorneys fee provision of Rule 4:42–9(a)(6) was *Van Houten v. New Jersey Manufacturers Insurance Co.,* 159 N.J.Super. 208, 387 A.2d 419 (Passaic County D.Ct.1978). In *Van Houten,* the court noted:

> There reposes in the trial judge a rather broad discretion as to when and why an award of counsel fees would be proper. This is an exercise where "considerations of an equitable character are weighed." *Felicetta v. Commercial Union Ins. Co.,* 117 *N.J.Super.* 524, 528–29, 285 A.2d 242, 245 (App.Div.1971). See *Maros v. Transamerica Ins. Co.,* 143 *N.J.Super.* 307, 362 A.2d 1296 (Law Div.1976); *N. J. Mfrs. Ins. Co. v. Consolidated Mut. Ins. Co.,* 124 *N.J.Super.* 598, 308 A.2d 76 (Law Div. 1973).

159 N.J.Super., at 212, 387 A.2d at 421. In exercising their discretionary power to award attorneys fees to successful parties, New Jersey courts have generally not provided detailed explanations for their decisions setting the amount which would be awarded to these parties. For example, in *Van Houten,* the court simply stated:

> This court is not unaware of the counsel fees sought by plaintiff's attorney as set forth in his affidavit of services. However, in view of the amount of the claim at issue and that obtained on settlement, this court is constrained to find that an award of $250 is reasonable and proper.

159 N.J.Super., at 217, 387 A.2d at 424. Similarly, in one case in which the court reduced the requested award, *McLean v. S & L Steel Co.,* 141 N.J.Super. 564, 567, 359 A.2d 502, 503 (App.Div.1976), the court said:

> We have reviewed the record in its entirety in light of the affidavits of services filed below by the attorneys for S & L Steel Company and have concluded the awards are excessive and should be reduced to a total fee of $3,000 exclusive of costs, $2,000 of which is allocated to the firm of Milstead and Ridgway and $1,000 to the firm of Fine, Staud, Grossman and Garfinkle.

■ While this court must apply the substantive principles of New Jersey law in setting the amount of attorneys fees to be awarded in this diversity case, it must also comply with the procedural guidelines laid down by the Court of Appeals for the Third Circuit for calculating the amount of fees awarded. The Third Circuit admonished district courts awarding attorneys fees in its opinion in *Francois v. Francois,* 599 F.2d 1286, 1296 (1979):

> we again remind trial courts that a written explanation of the basis for an attorney's fees award is still the preferred practice in this circuit, and that we will not hesitate to reverse awards from which we cannot adequately determine whether the standards of *Lindy Bros.* have been met.

Thus, a review of the Third Circuit's guidelines on this subject is in order.

■ The principles governing the setting of attorneys fees in federal suits in this circuit were set forth in a series of cases beginning with *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.* (*Lindy I* ), 487 F.2d 161 (3rd Cir. 1973), and a subsequent decision in that case referred to as *Lindy II,* 540 F.2d 102 (1976). Under *Lindy,* the court is to consider four basic factors in setting the amount of the fee award: (1) the time spent by each attorney in handling the particular federal action; (2) the basic valuation of the services rendered by each attorney; (3) the contingent nature of the success; and (4) the quality of each attorney's work in that particular case. *Lindy I,* 487 F.2d at 166–69. The trial court should first set the first two factors—the time spent by each attorney in the federal litigation and the reasonable hourly rate for that attorney, which together should set the lodestar of the court's fee determination. After calculating the lodestar figure, the court may adjust the total fee awarded to reflect the other two considerations—the factors relating to the likelihood of success at the time the suit was commenced and the quality of

a given attorney's work in this case as compared with the typical quality of legal services in this sort of case. If the court finds that the successful party now seeking attorneys fees overcame significant obstacles which made success seem unlikely at the outset, then the court may increase the fees awarded to him to reflect that consideration. The court may also increase or decrease the amount awarded to a party to reflect the quality of the attorney's work in that case.

After completing these *Lindy* calculations, the court must determine whether "other factors are present which weigh in favor of adjustment of the lodestar either upward or downward." *Foster v. Gloucester County Board of Chosen Freeholders*, 465 F.Supp. 293, 300 (D.N.J.1978). As this court said in *Foster*:

> this circuit and others have indicated that the lodestar may be reduced, in the district court's discretion, to account for the "limited benefits produced by the litigation," the limited public purpose served by the plaintiff's award, . . . or the limited extent to which a plaintiff prevails in the litigation.

465 F.Supp., at 300.

The court will now apply these considerations to the parties' applications for attorneys fees and costs.

The firm of Archer, Greiner & Read, which represents F. Morse Archer, Esquire, the guardian ad litem who is an intervening defendant, submitted an affidavit of Peter E. Driscoll, Esquire, a partner in the firm and one of the attorneys involved in this case, in support of its motion for attorneys fees. The affidavit reviews all of the actions taken by the firm in representing the guardian ad litem in this federal litigation. In addition to the narrative description of the services rendered by the firm, the affidavit includes a list of every billable action taken by the attorneys and paralegal assistant who worked on the case, with the date and duration of the activity. This affidavit lists a total of 89.7 billable hours of work by Mr. Driscoll, 112.2 hours by Jeff S. Masin, Esquire, an associate of the firm who

worked with Mr. Driscoll, and 7.1 hours by Mrs. Barbara Taylor, a paralegal assistant who performed certain services in the handling of this case.

The court has carefully reviewed the description of the services rendered by Archer, Greiner & Read, as recounted in Mr. Driscoll's affidavit and it has concluded that all of the actions for which that firm seeks attorneys fees were valid services rendered in relation to the federal litigation in this case. Therefore, the court accepts the list of time spent by each person at that firm as the relevant time for its *Lindy* calculations.

■ The law firm of Brown, Connery, Kulp, Wille, Purnell & Greene, which represents C. Edwin Munger, one of the intervening defendants in the federal action, submitted an initial and a supplemental affidavit of Paul Mainardi, Esquire, who is a partner in that firm and who has worked on this case. The affidavits list each individual action taken by the attorneys and law clerks at that firm with regard to this litigation. These affidavits list a total of 77.8 hours of legal services provided by the late George Purnell, a partner in the firm who initially had primary responsibility for the matter, 349.6 hours for Mr. Mainardi, who served as the second attorney at that firm throughout much of the litigation, and 107.6 hours of work by law students who performed various research assignments on the case. The court has reviewed the list of services provided by the attorneys and law students at that firm, and has concluded that the firm's request, as modified by Mr. Mainardi's letter of October 11, 1979, concerns only services rendered in the federal, and not the state litigation. However, the court has decided to reduce the total number of hours credited to Mr. Purnell's work to 70 hours, since some of the time figures submitted by the firm were based on estimates made by Mr. Mainardi, not on actual time slips made at the time the services were rendered. The court therefore sets the hours for which fees may be awarded as 70 for Mr. Purnell, 349.6 for Mr. Mainardi, and 107.6 for the various law students.

William C. Gotshalk, Esquire, who represents the Estate of the late W. Louis Bossle, an intervening defendant, submitted an affidavit in support of his request for attorneys fees. Unlike the affidavits submitted in support of the requests of Archer, Greiner & Read and Brown, Connery, Kulp, Wille, Purnell & Greene, Mr. Gotshalk's affidavit not only lists those services which were clearly part of the federal litigation, but also includes services which were rendered in representing the Estate of Mr. Bossle in the state court litigation, as well as some services which are not sufficiently described to permit the court to determine whether they were taken as part of the federal or the state court suits. These services, which either concerned the state court litigation or which are insufficiently described to permit their classification, may not be the subject of an award of attorneys fees in this federal litigation. Consequently, the court has been forced to examine and classify each individual item listed by Mr. Gotshalk to determine if it is sufficiently clear that it relates to the federal litigation. The court has reviewed Mr. Gotshalk's affidavit and determined that 76.25 hours listed by Mr. Gotshalk concern the federal litigation for which attorneys fees may be awarded.

M. Gene Haeberle, Esquire, represents William S. Keown, who was the attorney insured by Transamerica's liability policy and who is the principal defendant in both the state and federal court suits. Mr. Haeberle submitted an original and a supplemental affidavit of legal services in support of his motion for attorney's fees. Like Mr. Gotshalk's affidavit, Mr. Haeberle's affidavits refer to services performed in both the federal and the state court suits, as well as many services which were not sufficiently described to permit this court to classify them. As a result, the court has been compelled to examine and classify each act of legal service to determine if it clearly concerns the federal litigation. The court has concluded that 170.25 hours of services rendered by Mr. Haeberle undisputably related to the federal suit and may be the basis of an award of attorney's fees by this court.

The law firm of Reiners & Davis represents intervening defendants George A. Munger and Carol L. Ober in both the state and federal litigation. The firm submitted an initial and a supplemental affidavit of M. Jefferson Davis, Esquire, in support of its motion for attorney's fees. The late John Henry Reiners, Jr., Esquire, initially had the primary responsibility for the conduct of this litigation. As Mr. Reiners' health began to fail, Mr. Davis assumed primary responsibility. In addition to the services of Messrs. Reiners and Davis, the firm seeks compensation for the services rendered by two law students, as well as by an associate of the firm, Douglas L. Derry, Esquire. The court has reviewed the affidavits describing the services rendered by the firm and has concluded that all of the time charges submitted by Reiners & Davis concern the conduct of the federal litigation and may be the subject of an award of attorney's fees. Consequently, the court has set the time figures as follows: Mr. Reiners, 26.4 hours; Mr. Davis, 146.4 hours; Mr. Derry, 1.4 hours; and the law students, a total of 45.2 hours.

Having thus set the time figures for each attorney, the court will now consider the question of hourly rates. Although any court imposed rates must be somewhat arbitrary, the court believes that a fair rate of compensation in this litigation would be $75.00 per hour for the services of the principal senior attorneys representing a successful party, $50.00 per hour for a junior attorney, and $25.00 per hour for a law student or a paralegal assistant. The court considers Messrs. Driscoll, Purnell, Gotshalk, Haeberle, Reiners, and Davis as principal senior attorneys and Messrs. Masin, Mainardi, and Derry as junior attorneys.

Applying these hourly rates to the time figures for the attorneys, the court has made the following lodestar calculations:

1. Archer, Greiner & Read

| | | |
|---|---|---|
| a. | Driscoll | $ 6,727.50 |
| b. | Masin | 5,610.00 |
| c. | Taylor | 177.50 |
| | Firm Total | $12,515.00 |

2. Brown, Connery, Kulp, Wille, Purnell & Greene

| | | |
|---|---|---|
| a. | Purnell | $ 5,250.00 |
| b. | Mainardi | 17,480.00 |
| c. | Law Students | 2,690.00 |
| | Firm Total | $25,420.00 |

3. William C. Gotshalk, Esquire — 5,718.75

4. M. Gene Haeberle, Esquire — 12,768.75

5. Reiners & Davis

| | | |
|---|---|---|
| a. | Reiners | $ 1,980.00 |
| b. | Davis | 10,980.00 |
| c. | Derry | 70.00 |
| d. | Law Students | 1,130.00 |
| | Firm Total | $14,160.00 |

 There is no claim or reason for further adjustment for the contingency and quality factors. The court finds that the succeeding parties were not faced with such significant obstacles that the fees awarded should be increased to reflect the contingent nature of the litigation. Similarly, the court finds that all of the attorneys rendered legal work of typical quality for actions of this kind, and therefore no special quality adjustment is appropriate. Thus, the lodestar amount for each attorney and firm equals the final *Lindy* amount. *See Hughes v. Repko*, 578 F.2d 483, 491 (3rd Cir. 1978) (Garth, J., concurring). However, the court finds that a post-*Lindy* discretionary adjustment should be made to reflect the limited success of the defendant and intervenors. *Foster*, 465 F.Supp., at 300. Although the court recognizes that an across the board reduction in fees awarded is not the preferred method of making adjustments, *Foster, id.*, the court believes that such an approach is the fairest one under the circumstances of each case. Consequently, the court will reduce each attorney's *Lindy* amount by thirty percent to reflect their limited success in this litigation. Applying this thirty percent reduction, the court hereby sets the final amount of attorneys fees to be awarded as follows:

| | | |
|---|---|---|
| 1. | Archer, Greiner & Read | $ 8,760.50 |
| 2. | Brown, Connery, Kulp, Wille, Purnell & Greene | 17,794.00 |
| 3. | William C. Gotshalk, Esquire | 4,003.12 |
| 4. | M. Gene Haeberle, Esquire | 8,938.12 |
| 5. | Reiners & Davis | 9,912.00 |

The court has also considered various requests for the awarding of costs incurred by the attorneys in the course of their legal representations. The court believes that its fee awards shall account for most of the total expense attributable to the legal representation of the prevailing parties in this action and that a further award to cover costs is unwarranted in view of the parties' limited success in this litigation. Therefore, in the exercise of this court's discretionary power, it will decline to award any costs to the moving parties.

The court will enter an appropriate order.

